**Teresa Francesca Luci CARUSO, Appellant,**

v.

**John LUCIUS, Appellee.**

No. 11713.

Court of Civil Appeals of Texas.

Austin.

Dec. 3, 1969.

Rehearing Denied Jan. 7, 1970.

Franz & Franz, Charles L. Franz, Jr., San Antonio, Mitchell, Gilbert & McLean, Phillip W. Gilbert, Austin, for appellant.

John J. Migl, Russell G. Ferguson, Austin, for appellee.

PHILLIPS, Chief Justice.

This is a suit brought by the first wife, the Appellant, against the estate of her deceased husband and his adopted son, Appellee, for a partition of her undivided community interest in properties accumulated during the marriage. This claim is also for her share of the community estate accumulated during her husband's putative marriage to a second wife.

Neither side has attacked the adoption proceedings pertaining to the Appellee nor his claim of heirship to his lawful portion of the estate.

Trial was to a jury which found in favor of Appellant; however, the court entered judgment that she take nothing by her suit. Consequently, she perfected her appeal to this Court.

We reverse and render judgment for Appellant.

I.

Appellant's points of error one and two, briefed together, are the error of the court in granting Defendant's (Appellee's) motion to disregard the jury's findings in response to special issue No. 2, since the jury's findings in response thereto are supported by at least some evidence; in failing and refusing to grant Plaintiff's (Appellant's) motion for judgment on the jury's verdict.

We sustain these points.

■ Appellant is asserting her claim, as the prior and legitimate wife of Pasquale Caruso, to her portion of the community property, which, under Texas law would be one-half of Pasquale Caruso's one-half of the community property accumulated during his later, putative marriage to Arcelia Lucius Caruso.[1]

The jury's answer to Special Issue No. 1 was that the Appellant and Pasquale Caruso had been legally married on September 18, 1913 and the jury's answers to Special Issues Nos. 4 and 5 were that at the time of Pasquale Caruso's and Arcelia Lucius Caruso's common law marriage of January 8, 1925, Arcelia Caruso did not know of the pre-existing marriage of Appellant and Pasquale Caruso.

Since Arcelia Lucius Caruso was innocent of knowledge of the pre-existing

1. Under Texas law, where one spouse of a prior marriage enters into a second marriage relationship with an innocent party who has no knowledge of the pre-existing and unterminated marriage, the properties acquired during the second, putative marriage relationship, by the putative spouses, are half owned by the second, putative spouse, and the other one-half of those properties are owned in equal one-quarter parts by the prior spouse and by the twice-married spouse. Hammond v. Hammond, 108 S.W. 1024 (Tex. Civ.App., 1908, writ ref'd) ; Parker v. Parker, 5th Cir., 1915, 222 F. 186, cert. den. 239 U.S. 643, 36 S.Ct. 164, 60 L.Ed. 483 ; concurring opinion of Justice Bonner in Routh v. Routh, 57 Tex. 589 (1882).

marriage, she was not a meretricious spouse, but was a putative spouse, and entitled to one-half of the "community" properties acquired by herself and Pasquale Caruso during their marriage relationship. Appellant's claims, therefore, were to one-half of Pasquale Caruso's one-half of the properties in question, plus the net income from those properties since the date of Pasquale Caruso's death on July 19, 1966.

Therefore, Appellant contends that as the widow of Pasquale Caruso, she would be entitled to a partition of her undivided one-fourth interest in the properties in question, plus one-fourth of the net income derived from those properties since the death of Pasquale Caruso on July 19, 1966.

The answers of the jury to the Special Issues would have entitled Appellant to entry of a judgment according to the request made by her in her Motion for Judgment; however, the trial court held that there was no evidence to support the jury's finding in response to Special Issue No. 2, to the effect that her marriage to Pasquale Caruso had not been dissolved by divorce or annulment before the death of Pasquale Caruso. On that basis, the trial court entered judgment that the Appellant take nothing by her suit.

Pasquale Caruso was born on August 27, 1890 in Molochio, Italy. He and Carmelo Cristarella (one of Appellant's witnesses), who was born March 10, 1899 in Molochio, Italy, became friends there. Pasquale Caruso was married to the Appellant in Molochio, Italy, on September 18, 1913. Cristarella knew both of them well and they were all close friends.

In 1914, Pasquale Caruso came to the United States, to live in Amsterdam, New York. That same year, the Appellant and Pasquale Caruso had a child, who died at birth. Pasquale Caruso moved from Amsterdam, New York to San Antonio, Texas around 1917, and in 1921, Carmelo Cristarella moved from Molochio, Italy to San Antonio, Texas, where he renewed his friendship with Pasquale Caruso.

After 1921, Cristarella and Caruso saw each other almost every day. Caruso moved from San Antonio, Texas to Austin, Texas around 1929, with Arcelia Lucius Caruso, whom he introduced as his wife. They remained residents of Austin, Texas until Pasquale Caruso's death on February 6, 1966. Except for a stay of around a month in Fort Worth, Texas and a visit to France for about a month, Caruso never stayed anywhere else for any significant time after his marriage to Appellant.

In 1930, at the age of eight, the Appellee had come to Austin to live with his aunt, Arcelia Lucius Caruso, and with Pasquale Caruso, and he was adopted by them on December 10, 1942.

Pasquale Caruso kept his prior marriage hidden from his second wife, Arcelia Caruso, at least until after they were married and from his adopted son, the Appellee, John Lucius. He acknowledged his existing marriage to Appellant, to his old friend, Carmelo Cristarella, many times. However, he attempted to keep this fact as undisclosed as possible, and in 1960 or 1961, he specifically refused to send the Appellant money, stating, "I can't afford to send money to my wife, because I be incriminated."

As has been mentioned, the trial court, at the urging of the Appellee, refused to give effect to the Appellant's evidence showing that Appellant's marriage to Pasquale Caruso had never been terminated, and specifically ignored the jury's finding in response to Special Issue No. 2. This action of the trial court must be reversed because of three independent lines of evidence supporting the jury's finding.

The evidence showed Pasquale Caruso's admissions of the existing nature of his marriage to Appellant, in conversations with Appellant's witness, Carmelo Cristarella.

"Q Did Mr. Caruso ever discuss anything with regard to Teresa Francesca Luci Caruso with you?

A Yes, several times. * * * in 1961 or—60, here in Austin, Texas. My brother come.

Q And you and your brother were here in Austin?

A Visited him in the hospital here, Brackenridge Hospital.

Q Who did you see there?

A We see Caruso. He was sick in bed.

Q Was there any conversation there?

A Yes, sir.

Q What was the conversation?

A The conversation was my brother asked Caruso.

Q Please slow down, sir.

A My brother asked Caruso, his wife asked my brother, to send some money to help her because she was sick in the hospital.

\* \* \* \* \* \*

Q What was the response?

A The response he say, 'no.' He refused to send the money.

Q Do you remember the words he used?

A Yes, I did. He say, 'I can't afford to send the money to my wife, because I be incriminated.' "

Mr. Cristarella further testified as follows:

"Q Mr. Cristarella, did Mr. Caruso ever refer to Teresa Francesca Luci Caruso as his wife?

A Yes, sir.

Q On how many occasions?

A Many, many times."

Pasquale Caruso's use of the word "incriminated" is important. It is reasonable to infer that Caruso was referring to the crime of bigamy, which he could certainly never be convicted of if his marriage to the Appellant had been terminated by a divorce or annulment. His statement evidences his appreciation of the fact that his very acknowledgment of the Appellant as "my wife" was against his interest.

An admission of a decedent, acknowledging a marriage with a third party, is admissible evidence to show the existence of the marriage. Antonopoulos v. Woolsey, 392 S.W.2d 194 (Tex.Civ.App., El Paso, 1965, no writ); Snyder v. Schill, 388 S.W.2d 208 (Tex.Civ.App., Houston, 1965, writ ref. n. r. e.).

Appellee relies on a line of authority such as Texas Employers' Ins. Ass'n v. Elder, 155 Tex. 27, 282 S.W.2d 371 (Tex. 1955) where it was held that a presumption arises from the fact of a subsequent marriage that previous marriages have been dissolved. It is said to be one of the strongest presumptions known to law and that the presumption is itself evidence that may even outweigh positive evidence to the contrary. This presumption is based on sound public policy that favors morality, innocence, marriage and legitimacy. However, in upholding this presumption in Elder the Court stated that there was no evidence that the marriage had been dissolved or that it had not been dissolved. Here we have sufficient evidence that the marriage had not been dissolved to have gone to the jury with the resulting finding. Thus the presumption was rebutted.

In addition to the deceased's admission against interest there is further evidence that the marriage had never been dissolved.

This is evidence suggesting that Appellant and Pasquale Caruso had never been divorced and that their marriage had never been annulled and was presented in the form of a series of certificates proving that no such divorce or annulment took place in

any of the jurisdictions where Pasquale Caruso or the Appellant resided.

■ The evidence discloses that Appellant was born, married and has resided all of her life in Molochio, Italy. Pasquale Caruso was born and married in Molochio, Italy. He left Italy in 1914, came to the United States and resided in Amsterdam, New York until 1917 when he moved to San Antonio, Texas. From San Antonio he moved to Austin, Texas where he died. Certificates were presented into evidence from Molochio, Italy, New Amsterdam (Montgomery County, N.Y.), Bexar and Travis Counties, Texas, declaring that Caruso had never obtained a divorce or annulment in any of these jurisdictions.

Since Caruso had entered into a ceremonial marriage with Arcelia Lucius Caruso in 1940 in Floresville (Wilson County), Texas and may have possibly lived for about a month in Fort Worth (Tarrant County) Texas, Appellant secured additional certificates negating any divorce or annulments in these places. In addition, Appellee admitted that Pasquale Caruso did not live any place other than Molochio, Italy, Montgomery County, New York, Bexar County or Travis County, Texas since 1912.

Evidence of absence of divorce or annulment records in the official records where they should be found, rebuts the presumption of the termination of a prior marriage, where a second marriage has been entered into by one of the parties. Woods v. Hardware Mutual Casualty Co., 141 S.W.2d 972 (Tex.Civ.App., Austin, 1940, writ ref'd; Vernon's Ann.Civ.St., Art. 3731a, Sec. 5; Fowler v. Texas Exploration Co., 290 S.W. 818 (Tex.Civ.App., Galveston, 1927, writ ref'd, n. r. e.).

As the Court of Civil Appeals held in Dockery v. Brown, 209 S.W.2d 801 (Tex. Civ.App., El Paso, 1947, no writ), the prior wife "* * * was not required to do the unreasonable and look to every jurisdiction where a proceeding might possibly be had, but to look only where such proceedings might reasonably be expected to be had under the law."

Mr. Cristarella's testimony that in Molochio, Italy, the general reputation of Pasquale Caruso and Appellant was that they were married provides further evidence upon which the jury's verdict may be upheld. Marriage may be proved by general reputation. McCormick and Ray on Evidence, Sec. 590, p. 749; Wigmore on Evidence, 3rd Ed., Sec. 1602; Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682 (1955).

Against this compelling evidence, the Appellee presented no evidence of a termination of Appellant's marriage to Pasquale Caruso. Thus not only is there evidence negating a dissolution of Appellant's marriage to Pasquale Caruso, there is no evidence to the contrary except the naked presumption arising from the putative second marriage.

Thus under this record this Court must review all of the evidence in the light most favorable to the Appellant, disregard the conflicts in the testimony and indulge every intendment reasonably deducible from the evidence in favor of the Appellant. Simpson v. Simpson, 380 S.W.2d 855 (Tex.Civ. App., Dallas, 1964, writ ref'd n. r. e.).

## II.

■ Appellee has three cross-points, the first two briefed together, being the error of the trial court in overruling Appellee's motion to disregard the jury's findings in response to Special Issue No. 1, because there is no evidence or there is insufficient evidence to support the jury's finding; that such finding is "diametrically opposed" to the court's instructions under such special issue.

We overrule this point.

Here Appellee contends that the mandatory requirements for a valid marriage in Italy on September 18, 1913 were not met. These were the substantive laws of Italy

which were contained in the instructions to the jury and stipulated as correct.

We cannot agree with this contention.

Appellee's own Italian language expert translated the title of the office and of the official giving the certificate attesting to the marriage as "the office of the Civil State and the first signature is signed by the Officer of the Civil State of Molochio." Appellee's own expert witness on the laws of Italy testified that it is the "Officer of the Civil State" who conducts the official civil marriage ceremony, and that "The act of matrimony will be complied immediately following the celebration." He further testified that only civil marriages were permitted under law to be registered in the registry.

"Official acts or duties are, in the absence of evidence to the contrary, presumed to have been properly performed; and, as a general rule, it is presumed that a public official discharges his duty or performs an act required by law in accordance with the law and the authority conferred upon him, and that he acts fairly, impartially, and in good faith," 31A C.J.S. Evidence § 146a, p. 318. This presumption has been applied to the acts of foreign governments and their officers, 31A C.J.S. Evidence § 146a, p. 331.

Appellant's certificate, stating that the records of the civil registry, in the "Office of the Civil State" (as Appellee's witness translated the phrase), certified to by the "Officer of the Civil State" (as Appellee's witness translated that phrase) showed that "Mr. Pasquale Carmelo Caruso born in Molochio (Reggio Cal.) on the 27th of August, 1890, has been legally married to Teresa Francesca Luci born in Molochio (Reggio Cal.) on the 25th day of November, 1884, on the 18th of September, 1913." The summary statement regarding their marriage is no more a "conclusion" than the statement on the Texas marriage license introduced by the Appellee that "I united in marriage Mr. P. Caruso and Miss Arcelia

Lucius." Virtually all official documents contain conclusions that acts were "duly" or "legally" performed; that persons were "born," "died," were "married;" that a "corporation" was chartered, etc. Appellee's own expert witness testified to the Italian law which provides for recording the marriage act in the registry in question, and "An official record or document of a foreign country may be evidenced by a copy, summary, or excerpt authenticated as provided in the Federal Rules of Civil Procedure," under 28 U.S.C. Sec. 1741.

We hold that the certificate in question raised the presumption of a valid marriage that in no way has been rebutted. See *Elder,* above. The trial court did not abuse his discretion in admitting this certificate into evidence.

Appellee's second and third cross-points, briefed together are the error of the trial court in overruling Appellee's motion for judgment non obstante veredicto, because it is uncontradicted that Appellant did not do equity and did not come into court with clean hands; in overruling Appellee's motion for judgment non obstante veredicto, because it is uncontradicted that Appellant's claim, if any she had, was stale, and that Appellant was estopped after 54 years of silence.

We overrule these points.

■ The trial court correctly overruled Appellee's motion for judgment non obstante veredicto because Appellant's claims for partition of her community property were made within a year after her husband's death, and neither laches nor estoppel pertain, as a matter of law, as a defense to Appellant's lawful claims. Routh v. Routh, 57 Tex. 589 (1882); 35 Tex.Jur.2d, Laches and Stale Demands, sec. 3, p. 462.

In addition, laches is an affirmative defense and its essential elements must be proved. Rule 94, Texas Rules of Civil Procedure; City of Fort Worth v. Johnson, 388 S.W.2d 400 (Tex.1964.).

We reverse the judgment of the trial court and render judgment in accordance with Appellant's motion for judgment filed in the trial court.

Reversed and rendered.