[No. 64156-1. En Banc.]
Argued February 11, 1997. Decided July 24, 1997.
BONNIE SEIZER, *as Guardian, Respondent,* v. DON SESSIONS, *as Personal Representative,* ET AL., *Petitioners.*

644

*Bullivant, Houser, Bailey, Pendergrass & Hoffman,* by *R. Daniel Lindahl* and *Gregory E. Price,* for petitioners.
*Morse & Bratt,* by *Gideon D. Caron,* for respondent.

JOHNSON, J. — Two women, Rosalie (who resides in Texas) and Barbara (who resides in Washington), claim to be married to deceased lottery winner Elmer Sessions. The issue is whether Texas or Washington law should govern the action brought by Rosalie to recover any community property share she may have in the lottery winnings. The trial court granted Barbara's motion for partial summary judgment, ruling Washington law governs, and dismissing the action because the suit is barred under Washington law. The Court of Appeals reversed, reinstated the action, and held Texas law governs. We reverse the Court of Appeals, but remand to the trial court for further proceedings.

## FACTS

Elmer Sessions is deceased. He died in Washington in August 1991, two years after winning nearly $100,000 a year for 20 years in the Arizona State Lottery.

Elmer Sessions married Rosalie in Houston, Texas, in November 1941. The couple's daughter, Bonnie (Seizer), was born in 1942. In 1954, while the family was living in Hamburg, New York, Rosalie became mentally ill. Elmer helped move Rosalie and Seizer back to Houston, where the two stayed with Rosalie's parents. Elmer then returned to New York, where he was working. He visited Rosalie and Seizer in Houston, but never rejoined them in Texas on a permanent basis. Neither mother nor daughter has had any direct communication with Elmer since approximately 1957, nor, according to Seizer, has either attempted to compel financial support of any kind until the present suit was filed.

Elmer eventually made his home in Vancouver, Wash-

ington. Seizer and Rosalie, on the other hand, continued to reside in Texas and, throughout the years, mother and daughter have only rarely spoken of Elmer. In 1987, when Rosalie was declared incompetent by a Texas court, Seizer was named her legal guardian. To Seizer's best knowledge, her mother and father never divorced.

In 1964, Seizer wrote to several county clerks requesting marriage or divorce information regarding her father in an attempt to locate him. She received a reply from Rio Blanco County in Colorado regarding a car registered to her father and Mary Sessions, who lived in Rangely, Colorado. Seizer telephoned the home, spoke with Mary, identified herself as Elmer's daughter, and left a message for her father to call her, which was never answered. Elmer had established a common-law marriage with Mary, which lasted 26 years. The couple had four children and were formally divorced in 1982.

Defendant Barbara Sessions met Elmer in 1982. She moved in with Elmer shortly thereafter, and kept a permanent residence with him in Washington until his death in 1991. Barbara claims she and Elmer were married in Tijuana, Mexico in 1984. Barbara also claims she knew nothing of Elmer's marriage to Rosalie, nor of Seizer's existence, until just prior to Elmer's death.

In 1989, Elmer and Barbara were living temporarily in Tucson, Arizona. Either Elmer or Barbara purchased a lottery ticket that turned out to be a winner. Barbara asserts she purchased the winning ticket, and she and Elmer decided to list him as the annuitant and her as the beneficiary. This statement, however, is contested and is contradicted by documentary evidence (regarding times of purchase). On October 2, 1989, Elmer signed an annuity information sheet arising from the September lottery drawing in the amount of $2,576,908.30, which pays $97,922.53 annually. He named Barbara as beneficiary.

Seizer, as guardian for Rosalie Sessions, filed a complaint in Clark County Superior Court on August 26, 1992, seeking Rosalie's community property share of Elmer's

lottery winnings.[1] Seizer sought partial summary judgment that Texas law applies. Barbara sought summary judgment dismissing the action on the issue of laches or, in the alternative, applying Washington law to the action. Following a request by the trial court for briefing on RCW 26.16.140, the court held Washington law governs the action, the marital community of Rosalie and Elmer Sessions is defunct under RCW 26.16.140, and Plaintiff has no interest in the lottery winnings. The trial court therefore dismissed the action against Barbara Sessions.

Seizer appealed to the Court of Appeals, arguing Texas law should govern the action or, in the alternative, if Washington law applies, RCW 26.16.140 should not be applied to bar Plaintiff's claims. Barbara answered, arguing there was no conflict of laws, but if the court applied a conflict of laws analysis, Washington law governs and Seizer's claim is barred. The laches argument was not an issue at the appellate level. The Court of Appeals reversed and remanded, holding there was a conflict of laws and Texas law should govern. *Seizer v. Sessions*, 82 Wn. App. 87, 104, 915 P.2d 553 (1996). The court also remanded the factual issues regarding purchase of the lottery ticket. *Seizer*, 82 Wn. App. at 104.

## ANALYSIS

■■ When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 100-01, 864 P.2d 937 (1994). When the result of the issues is different under the law of the two states, there is a "real" conflict. *Pacific Gamble Robinson Co. v. Lapp*, 95 Wn.2d 341, 344-45, 622 P.2d 850 (1980). The situation where laws or interests of concerned states do not conflict is known as a "false" conflict. *Burnside*, 123 Wn.2d at 101. If a false

---

[1] In her complaint, Rosalie Sessions seeks only her share of the lottery winnings, and not a share of the remainder of Elmer's estate.

conflict exists, the presumptive local law is applied. *Rice v. Dow Chem. Co.,* 124 Wn.2d 205, 210, 875 P.2d 1213 (1994).

In Washington, when a husband and wife live separate and apart, their marriage may be defunct, and, under RCW 26.16.140, all earnings and accumulations are the acquiring spouse's separate property. The statute contemplates permanent separation of the parties—a defunct marriage. *Aetna Life Ins. Co. v. Bunt,* 110 Wn.2d 368, 372, 754 P.2d 993 (1988). Therefore, in Washington, if the trial court finds the marriage between Elmer and Rosalie defunct, the winnings yielded by the lottery ticket would be Elmer's separate property, which he is free to dispose of as he did in this case, by naming Barbara the beneficiary.

Texas does not have a similar statute. Under Texas law, once a marriage exists, it can be terminated only by death or court decree. *Estate of Claveria v. Claveria,* 615 S.W.2d 164, 167 (Tex. 1981). The result in this case under Texas law would be governed by *Caruso v. Lucius,* 448 S.W.2d 711, 712 n.1 (Tex. App. 1969), which held:

> Under Texas law, where one spouse of a prior marriage enters into a second marriage relationship with an innocent party who has no knowledge of the pre-existing and unterminated marriage, the properties acquired during the second, putative marriage relationship, by the putative spouses, are half owned by the second, putative spouse, and the other one-half of those properties are owned in equal one-quarter parts by the prior spouse and by the twice-married spouse.

Under Texas law, if Rosalie proves her marriage to Elmer was never terminated by divorce, she would recover one-quarter of the lottery winnings.

An actual conflict of laws exists because the result is different under the laws of Washington and Texas. Additionally, the laws of the two states reflect the different interests of Washington and Texas regarding the acquisition of property during a marriage in which the two

spouses have lived separately. We also note Sessions does not dispute the fact that a conflict exists.

■ We must now determine which state's law to apply. In a conflict of laws case, the applicable law is decided by determining which jurisdiction has the "most significant relationship" to a given issue. *Burnside,* 123 Wn.2d at 100; *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 580, 555 P.2d 997 (1976); *Werner v. Werner,* 84 Wn.2d 360, 368, 526 P.2d 370 (1974); *Baffin Land Corp. v. Monticello Motor Inn, Inc.,* 70 Wn.2d 893, 899-900, 425 P.2d 623 (1967). This test was developed from the RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 (1971).

■ Under the RESTATEMENT, the general principle which applies to a property case is:

> The interests of the parties in a thing are determined, depending upon the circumstances, either by the "law" or by the "local law" of the state which, with respect to the particular issue, has the most significant relationship to the thing and the parties under the principles stated in § 6.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 222.

■ Section 258 of the RESTATEMENT governs property interests in moveables acquired during marriage. "[T]he rule applies to chattels, to rights embodied in a document and to rights that are not embodied in a document." RESTATEMENT (SECOND) CONFLICT OF LAWS § 258 cmt. a. We previously applied this section of the RESTATEMENT in determining the character of a husband's pension when the couple had lived in both community property states and noncommunity property states. *In re Marriage of Landry,* 103 Wn.2d 807, 810-11, 699 P.2d 214 (1985).

Section 258 provides:

> (1) The interest of a spouse in a movable acquired by the other spouse during the marriage is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the movable under the principles stated in § 6.

(2) In the absence of an effective choice of law by the spouses, greater weight will usually be given to the state where the spouses were domiciled at the time the movable was acquired than to any other contact in determining the state of the applicable law.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 258. We adopt section 258 of the RESTATEMENT to apply to cases involving property interests in moveables acquired during marriage and apply it here to decide which state's law should govern these parties' interests in the lottery winnings.

The RESTATEMENT's comments contain two presumptions. "[T]he local law of the state where the spouses were domiciled at the time the movable was acquired will usually be applied to determine marital property interests . . . ." RESTATEMENT (SECOND) CONFLICT OF LAWS § 258 cmt. b. And "[w]hen the spouses have separate domicils at the time of the acquisition of the movable, the local law of the state where the spouse who acquired the movable was domiciled at the time will usually be applied . . . ." RESTATEMENT (SECOND) CONFLICT OF LAWS § 258 cmt. c. If we apply the presumption stated in comment c of the RESTATEMENT, Washington law should be applied in this case because Rosalie and Elmer had separate domiciles when Elmer acquired the lottery winnings, and Elmer was domiciled in Washington at that time.

In *In re Landry,* 103 Wn.2d at 810, we noted our acceptance of the principle that the character of property is determined by the law of the state in which the couple was domiciled at the time of acquisition. This principle is also stated in comment b to section 258 of the RESTATEMENT. It makes sense, therefore, to also adopt the presumption of comment c and arrive at the conclusion that when spouses are domiciled in different states, we will determine the character of the property by the law of the state in which the spouse who acquired the property was domiciled at the time of acquisition. We proceed, however, to an analysis of the section 6 principles to determine whether

the presumption stated in comment c is rebutted in this case.

The principles stated in section 6 relevant to determining the most significant relationship to the spouses and the movable are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6(2). These principles are analyzed below.

## A. Needs of the Interstate and International Systems

The comments regarding this first principle state the court should seek to further harmonious relations between states and facilitate commercial intercourse between them. This principle does not apply to the case at hand. Our decision here in no way impacts commercial intercourse between Washington and Texas, nor will it affect the relationship between the two states.

## B. Relevant Policies of the Forum

## C. Relevant Policies of Other Interested States and the Relative Interests of Those States in the Determination of the Particular Issue

"Of the factors listed in Subsection (2) of § 6, that which is of particular importance in the present context is the

one which calls for implementation of the relevant policies of the state with the dominant interest in the determination of the particular issue." RESTATEMENT (SECOND) CONFLICT OF LAWS § 258 cmt. b. If the purposes of a state's law would be furthered by its application to the facts, this is good reason for such an application to be made. RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 cmt. e. The state with the dominant interest should have its law applied. RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 cmt. f.

Both Washington and Texas are community property states, and property acquired during marriage in both states is presumed to be community property. RCW 26.16.030; TEX. FAM. CODE ANN. § 5.02 (West 1993).

Texas, to be sure, has important interests in this case. Rosalie is domiciled in Texas and was married to Elmer in Texas. As we observed previously, a marriage in Texas can be terminated only by death or divorce. *Claveria,* 615 S.W.2d at 167. Texas law also imposes a duty on each spouse to support the other. TEX. FAM. CODE ANN. § 4.02. Texas law thereby furthers a policy of respecting the sanctity of the marriage relationship and ensuring the support of both spouses within that marriage. Under Texas law, as we have observed, Rosalie would be entitled to one-quarter of the lottery winnings. This result furthers the purpose of ensuring that Rosalie, as Elmer's spouse, receive a share of his property so long as she is legally married to him.

Washington's policies differ from those of Texas. In Washington, application of the separate and apart statute protects a married person's assets as separate property when a "community" no longer exists. Because the statute applies only to marriages that are "defunct," we have stated "[i]t is the fact of community that gives rise to the community property statute; when there is no 'community', there can be no community property." *Aetna Life Ins. Co.,* 110 Wn.2d at 372 (citing Harry M. Cross, *The Community Property Law in Washington* (Revised 1985), 61

WASH. L. REV. 13, 33 (1986)). Washington law, unlike Texas law, thus expresses a policy that a marriage may sometimes be defunct even without an official divorce decree or death.

Applying Washington law to this case could yield one of two results. If the separate and apart statute applies, the marriage is defunct, the property belongs to Elmer, and Rosalie would not be entitled to any of the lottery winnings. The policy of protecting assets as separate property when a community no longer exists would be furthered by this result. If the statute does not apply because the marriage is not defunct, Rosalie would then be entitled to her community property share of the winnings. Elmer could dispose of his share of the community property, however, to Barbara. Therefore, if her marriage is not defunct, Rosalie would be entitled to one-half of the lottery winnings. *See* RCW 26.16.030(1).

Thus, the purposes of Washington's law regarding community property would be furthered by an application of its law to the facts of this case. In Washington, when spouses are living separately, there is a separate inquiry as to whether a community exists (whether the marriage is defunct) for the purposes of ownership of property. Applying Texas law would not allow this inquiry. Further, if the marriage of Rosalie and Elmer is not defunct, Washington law better supports the policy of protecting a spouse's interest in community property than does Texas law. Under Washington law, if the marriage is not defunct, Rosalie is entitled to one-half of the winnings, whereas under Texas law, she is entitled to only a one-quarter share.

Also, both states have laws expressing a policy of protecting a second, putative spouse. *Caruso* may be read for the proposition that it protects an innocent third party who enters into a marital relationship with someone already married. *Caruso*, 448 S.W.2d at 712 n.1. If the *Caruso* court had no interest in protecting the putative spouse, the court could have, under Texas law, found the

putative marriage void and awarded the first spouse one-half, as opposed to one-quarter, of the assets. *See* TEX. FAM. CODE ANN. § 2.22. Similarly, Washington's separate and apart statute protects third parties who enter into relationships with an already married individual. In this case, the result of applying either of the two states' laws would protect Barbara. Disregarding her status as beneficiary for purposes of this analysis, under Texas law she is protected because she is awarded one-half the property. Under Washington law, she is also protected because she is awarded one-half of the property. These factors support the application of Washington law.

## D. Protection of Justified Expectations

The comments state the court should not give much consideration to the principle of protection of justified expectations. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 258, cmt. b. Rosalie may have expected Texas law to govern her marriage to Elmer, although this is unclear because she had no contact with him for 40 years. Barbara's justified expectations might be that Washington law governed both her interests in the lottery winnings and her marriage to Elmer. Elmer may have justifiably expected that either his marriage to Rosalie was governed by the laws of Texas or, because he lived in Washington, Washington law applied to him and his situation. This principle does not clearly favor the application of either state's law.

## E. Basic Policies Underlying the Particular Field of Law

The basic policies underlying this particular area of law are to provide fairly for each spouse in characterizing the property between them as either community property or separate property. Texas law would allow Rosalie a one-quarter share. Washington law would demand a determination of whether the marriage between Rosalie and Elmer was defunct. If it is, Rosalie has no rights to prop-

erty acquired by Elmer. If it is not, Rosalie is entitled to half the lottery winnings. We need not favor Texas' legislative and court findings over our own when looking to basic policies underlying an entire field of law. This principle supports the application of Washington law.

## F. Certainty, Predictability and Uniformity of Result, and
## G. Ease in the Determination and Application of the Law to be Applied

These principles are considered important in resolving issues under section 258. RESTATEMENT (SECOND) CONFLICT OF LAWS § 258 cmt. b. These factors also particularly support adopting the presumption stated in comment c that, when the spouses have separate domiciles at the time of the acquisition of the moveable, the law of state where the spouse who acquired the movable was domiciled at the time will usually be applied. This is the simplest rule to apply and yields uniformity of result. It is also, of course, easier for Washington courts to apply Washington, rather than Texas, law.

We find the principles of section 6 support the application of Washington law to this case and support the presumption stated in comment c. We adopt the presumption stated in comment c of the RESTATEMENT to apply in choice of law cases under section 258, and we hold Washington law applies to this case.

This, however, does not end our inquiry. We must now decide whether RCW 26.16.140 applies as a matter of law to bar Rosalie's community property claim. RCW 26.16.140 states: "When a husband and wife are living separate and apart, their respective earnings and accumulations shall be the separate property of each."[2] Seizer asks this court not to apply the separate and apart statute in this case.

---

[2]RCW 26.16.140 was amended in 1972. LAWS OF 1972, 2d Ex. Sess, ch. 108, § 5. Prior to 1972, the statute read: "The earnings and accumulations of the wife and of her minor children living with her, or in her custody while she is living separate from her husband, are the separate property of the wife."

 Washington's community property laws are based on the existence of a viable marital community. A community encompasses more than mere satisfaction of the legal requirements of marriage. *Aetna Life Ins. Co.,* 110 Wn.2d at 372. The theory underlying community property is that it is obtained by the efforts of either the husband or wife, or both, for the benefit of the community. *Togliatti v. Robertson,* 29 Wn.2d 844, 852, 190 P.2d 575 (1948). Therefore, when a marital community no longer exists, there can be no community property because there is no longer any common enterprise to which each spouse is contributing. *Aetna Life Ins. Co.,* 110 Wn.2d at 372.

 The statute distinguishes between a "marital" and a "community" relationship. Mere physical separation does not dissolve the community, *Kerr v. Cochran,* 65 Wn.2d 211, 396 P.2d 642 (1964), but it is not necessary for purposes of RCW 26.16.140 that a dissolution action be final or even pending. *Togliatti,* 29 Wn.2d at 851-52. The statute applies, as we have previously noted, to marriages that are "defunct." *Rustad v. Rustad,* 61 Wn.2d 176, 180, 377 P.2d 414 (1963).

We have found a marriage defunct under RCW 26.16.140 only when the facts involved situations where both parties demonstrated the marriage was over. For instance, in *Togliatti,* the wife obtained an interlocutory decree of divorce from her husband, but no final decree was ever entered. The parties, however, lived separately and never resumed marital relations. *Togliatti,* 29 Wn.2d at 845. After the husband's death, the wife claimed an interest in the ownership of bonds the husband had acquired subsequent to their separation. We found the bonds were the husband's separate property because the wife had obtained an interlocutory decree of divorce, the spouses lived separate and apart, neither contributed to the support of the other, neither asserted a claim to property accumulated by the other, each managed business and affairs separately, and the wife had married another man. *Togliatti,* 29 Wn.2d at 852. Although no formal decree of divorce

nor any formal agreement regarding property was entered into, the conduct of the parties recognized the separate ownership of all property acquired subsequent to their separation. *Togliatti*, 29 Wn.2d at 852.

Our subsequent cases follow this approach, all requiring *some* conduct on the part of *both* spouses before we will apply the separate and apart statute and characterize property acquired by one spouse as his or her separate property. *MacKenzie v. Sellner*, 58 Wn.2d 101, 361 P.2d 165 (1961); *Aetna Life Ins. Co.*, 110 Wn.2d 368; *In re Marriage of Short*, 125 Wn.2d 865, 890 P.2d 12 (1995). In a particularly pertinent case, we held that acquisitions by the husband during a long separation from his wife, due to his wife's confinement in a mental institution, were not separate property, but community property. *Rustad*, 61 Wn.2d at 179-80. We have noted:

> A marriage is considered "defunct" when *both* parties to the marriage no longer have the will to continue the marital relationship. In other words, when the deserted spouse accepts the futility of hope for restoration of a normal marital relationship, or just acquiesces in the separation, the marriage is considered "defunct" so that the "living separate and apart" statute applies.

*In re Marriage of Short,* 125 Wn.2d at 871 (citing Cross, *supra,* at 34-35) (emphasis added).

The facts of this case are extreme. Given the length of separation and two competent spouses, we might be able to find that because both parties no longer had the will to continue the marital relationship, the marriage is defunct. Our test for whether the statute applies requires, at the least, an acquiescence in the separation. Here, however, the conduct tending to show a defunct marriage is Elmer's conduct only. Elmer moved away, established a common-law marriage, divorced, and then married Barbara. Rosalie, on the other hand, has been mentally ill and was declared incompetent. It is unclear whether her mental state was such that she was able to conduct herself

in such a way as to display conduct exhibiting a lack of will to continue the marital relationship. An incompetent person's silence cannot be enough to trigger the separate and apart statute because mere separation is not enough to trigger the statute. "A deserted spouse who desires that the relationship continue despite desertion or abandonment of the other — a frustration of the deserted spouse's community expectations — should remain protected by the community property rules and should be able to assert an interest in the deserting spouse's after-acquired property." Cross, *supra,* at 34. Further, our holding in *Rustad* that a marriage was not defunct when the spouses were separated due to the wife's confinement in a mental institution supports a conclusion that the conduct of *both* spouses must demonstrate that the marital community is defunct.

■■ We hold that RCW 26.16.140 requires some mutuality on the part of the spouses. Because it requires mutuality, the statute does not apply in situations where an abandoned spouse is mentally ill or incompetent during the separation. In this case, the marriage may be defunct if Rosalie was not incompetent or mentally ill at some time after separation, such that she could accept the futility of hope for restoration of a normal marital relationship or acquiesce in the separation, which is the test we established in *In re Marriage of Short,* 125 Wn.2d 865. Further, the fact a marriage is defunct should be established by the deserting spouse. *See* Cross, *supra,* at 35 n.114. In this case, Barbara must establish that the marriage between Rosalie and Elmer was defunct.

We reverse the Court of Appeals and hold Washington law applies to this case. We remand to the trial court for further proceedings in accordance with this opinion. If the trial court determines Rosalie has an interest in the lottery proceeds under Washington law, the court must also determine whether the lottery ticket was purchased with separate or community property and how this fact affects Rosalie's interest in the proceeds.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.