FILED
COURT OF APPEALS
DIVISION II

2014 JUN 10 AM 8: 41

STATE OF WASHINGTON

BY _____ DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

|  |  |
|---|---|
| In the Matter of the Marriage of:<br><br>ALICE AWWAD,<br>　　　　　　　Respondent,<br><br>and<br><br>SAMIR GEORGE AWWAD,<br>　　　　　　　Appellant. | No. 44449-6-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, P.J. — This appeal follows the trial court's entry of final orders ending a marriage between Samir and Alice Awwad. Samir appeals the dissolution decree and child support order. Samir argues (1) substantial evidence does not support the trial court's findings and (2) the trial court abused its discretion when distributing the community property and imputing Samir's income. Because substantial evidence supports the trial court's findings and the trial court did not abuse its discretion, we affirm.

## FACTS

Samir and Alice Awwad married in Lebanon in 1983 and separated in Washington State. Samir and Alice had four children, one of whom was still a minor at the time of trial.[1] Beyond this, the parties dispute many of the facts.

---

[1] We address the parties and their children by their first names for clarity, intending no disrespect.

A.  *Date of Separation*

Samir and Alice moved to the United States in 1986.  Samir and Alice lived together until 2006, when Samir moved to Florida and Alice moved to Washington State.  Samir and Alice traveled together to Mt. Hood to celebrate their 2007 wedding anniversary, and Hawaii to celebrate their 2008 wedding anniversary.  Samir and Alice filed their taxes jointly through 2009.

In 2009, after Samir moved to Florida, Alice made plans to move there and live with Samir.  Samir changed his mind, and moved to Pennsylvania in 2010.  Alice and Samir made plans for Alice to move to Pennsylvania later in 2010.

Before Alice moved to Pennsylvania, Samir told Alice's parents that he planned to divorce her.  Alice filed for divorce on November 22, 2010, after numerous unsuccessful attempts to talk with Samir.  Alice testified that despite filing for divorce, she attempted to preserve the marriage through 2011.

The trial court determined that the marriage was intact until December 1, 2010 stating:

> [Samir] and [Alice] separated on December 1, 2010.  This separation date is based upon [Alice's] filing of the Petition for Dissolution on November 22, 2010.  Although [Samir] claimed that the parties' date of separation was in 2006, when the parties began living in separate households, he failed to establish that the parties had a mutual intent to abandon the marriage before December 1, 2010, as required for the Court to find that a de facto separation existed and to characterize property acquired from 2006 to 2010 as separate property of the parties.

Clerk's Papers (CP) at 374 (emphasis omitted).

B.  *Credit Card Debt from the Purchase of the Ring*

In October of 2010, Alice charged approximately $15,000 to Samir and Alice's joint credit card for a ring and earring set (collectively, the ring).  Alice testified that Samir consented to the purchase, which was a gift for Alice's mother's 50th wedding anniversary.  By September

of 2012, Samir had paid $10,568.24 on this credit card debt (the ring debt), and $9,573.19 was still owed on the debt.

The trial court found Samir responsible for the remaining ring debt, stating:

> Before separation, [Alice] incurred a debt of approximately $15,000 on the parties' Bank of America credit card to purchase a ring as a gift for her mother's 50th anniversary. [Samir] has chosen to pay off that debt in monthly installments, even when he was earning substantial income and had the ability to pay off the debt in full. The remaining balance on this credit card shall be [Samir's] responsibility.

CP at 384-85.

C. *Employment and Income*

1. *Samir's Employment*

Samir had a master's degree in engineering and was certified as a professional engineer in 14 states. Samir had worked as an engineer and a professor earning over $100,000 per year from 2010 until July of 2012, when he was laid off.

Samir had chronic health problems. He remained unemployed from July of 2012 until trial, during which time unemployment provided his sole income source. Samir testified that he diligently searched for employment as an engineer, sending out over 200 resumes. But Samir made no attempts to find employment outside of the engineering field, such as teaching or working in a related field.

2. *Alice's Employment*

Alice was a stay-at-home mother from 1986 until 2005. In 2005, Alice graduated from dental hygiene school and began working part time, but never worked full time. Alice testified, with the support of a job search log, that despite diligent efforts to find full-time employment from September of 2011 until trial, she could find only part-time employment.

### 3. *Trial Court's Ruling*

The trial court found that Samir was voluntarily unemployed. The trial court explained this finding in its oral ruling:

> [Samir is] capable of working. He was working very recently. The job opportunities—I think for an engineer—he said he's been teaching. He can be a consultant. There's a lot of things out there for engineers. The construction business is picking up.

Verbatim Report of Proceedings (VRP) at 499.

Although Samir had earned over $100,000 per year from 2010 until July of 2012, the trial court imputed Samir's income at $60,000 per year, recognizing that Samir may have to accept lower paying work.

The trial court determined Alice's income based on her historical part-time earnings, rather than imputing full-time income.[2] After determining the incomes of Samir and Alice, the trial court ordered Samir to pay maintenance for four years and child support for approximately two years.

### D. *Loans from Alice's Family*

Alice borrowed money from her family during the marriage. Alice testified to four loans pertinent to this appeal. Alice borrowed (1) $62,218 from her brother; (2) $10,000 from the parties' son George; (3) $7,800 from her sister; and (4) $4,650 from her father.

The trial court admitted promissory notes to support the existence of Alice's brother's loans, copies of checks to support the existence of George's loans, copies of cancelled checks to establish the existence of Alice's sister's loans, and wire transfer receipts to support the existence

---

[2] The trial court did not make an affirmative finding that Alice was voluntarily underemployed.

4

of Alice's father's loans. The trial court listed these four loans, and found "based on the evidence presented that the amount of community liability that should be assessed for loans from [Alice's] family should be $50,000." CP at 385.

E.    *Sale of Alice's Brother's Property in Vancouver*

Alice's brother purchased a vacant property in Vancouver, Washington. Alice and her brother planned that after her brother built a house on the property, Alice and her children would move into it. In keeping with this plan, Alice was listed on some documents as the property's purchaser. But the trial court admitted a cancelled check showing that Alice's brother's company made the down payment on the property.

While Alice's brother was building the house, Alice decided against moving onto the property because she wanted to move to a better school district. Alice's brother completed the house on the property, sold the property, and transferred all of the equity back into his company. The trial court found that Alice received no profits from the property's sale:

> [Samir] claimed that [Alice] . . . received net profits . . . from [the property's] sale. [Alice] presented evidence that her brother provided the funds to purchase this property on her behalf. [Alice] decided that she did not want the property and chose to live in Camas to provide a better school district for the children. When [the property] sold, all of the net profits were paid to her brother, not to [Alice], as neither [Alice] nor [Samir] provided any funds for the purchase of [the property].

CP at 375.

F.    *Trial Court's Overall Distribution of Community Property*

The trial court distributed the community assets and liabilities such that Samir received a net value of $368,259.81 in community property, and Alice received a net value of $404,045.70. The trial court then transferred an additional $25,000 of Samir's pension over to Alice, to account for part of his back child support. This resulted in Samir receiving a net value of

$343,259.81, and Alice receiving a net value of $429,045.70. As part of this overall distribution, the trial court awarded Alice four of Samir's pensions.

The trial court's distribution of community property resulted in Alice's receiving more than 50 percent of the marital estate. Because $25,000 of Alice's community property award was designed to account for a portion of Samir's back child support, the trial court reduced Samir's back child support obligation by $25,000. In addition, the trial court adjusted Samir's maintenance payment downward and denied Alice's request for additional attorney fees.

G.      *Value of the Vehicles*

Samir and Alice owned many vehicles, three of which are at issue here. First, Samir and Alice owned a Ford Expedition. In late December of 2011, Samir gave the Ford to Samir and Alice's son Joey, and Joey traded the Ford in for a different vehicle. Second, Samir and Alice both testified to owning a decades old Pontiac Trans Am. Third, Samir and Alice owned a Mercury Sable. Alice testified that the Mercury was worth $5,000, based on its Kelley Blue Book value.

The trial court found that the Ford, the Pontiac, and the Mercury had a combined total value of $2,000. The trial court awarded all three vehicles to Samir. Samir appeals.

ANALYSIS

We begin our analysis by observing the high burden Samir bears in this case. As our Supreme Court has explained:

> [T]rial court decisions in a dissolution action will seldom be changed upon appeal. Such decisions are difficult at best. Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality. The spouse who challenges

such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court.

*In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985).

## I. FINDINGS OF FACT

Samir argues that insufficient evidence supports several of the trial court's findings of fact. We review the trial court's findings to determine whether substantial evidence supports them. *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). We interpret the trial court's findings to support the judgment whenever possible. *Smith v. Shannon*, 100 Wn.2d 26, 35, 666 P.2d 351 (1983). Failure to make a finding of fact where one is required is presumed equivalent to a finding against the party with the burden of proof, here Samir. *In re Welfare of A.B.*, 168 Wn.2d 908, 927, 232 P.3d 1104 (2010). Unchallenged findings are verities on appeal. *In re Marriage of Kim*, 179 Wn. App. 232, 246, 317 P.3d 555, *review denied*, 180 Wn.2d 1012 (2014).

In determining whether substantial evidence exists to support a trial court's finding of fact, we review the record in the light most favorable to the party in whose favor the findings were entered, here Alice. *In re Marriage of Gillespie*, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997). We defer to the trial court on issues of conflicting testimony and witness credibility. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002); *Greene*, 97 Wn. App. at 714. We will not disturb findings that substantial evidence supports even if conflicting evidence exists. *In re Marriage of Lutz*, 74 Wn. App. 356, 370, 873 P.2d 566 (1994).

A.  *Finding that the Marital Community Was Intact until December 1, 2010*

Samir argues that substantial evidence does not support the trial court's finding that the marital community was intact until December 1, 2010, the date Alice filed for divorce. We disagree.

Normally, assets acquired during a marriage are presumed to be community property. *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). But "[w]hen spouses or domestic partners are living separate and apart, their respective earnings and accumulations shall be the separate property of each." RCW 26.16.140.

Whether spouses are living "separate and apart" turns on the particular facts of each case. *In re Marriage of Wright*, ___ Wn. App. ___, 319 P.3d 45, 51 (2013). The person asserting that the spouses are living "separate and apart" must establish that fact by a preponderance of the evidence. *See Seizer v. Sessions*, 132 Wn.2d 642, 659, 940 P.2d 261 (1997); *Boisen v. Burgess*, 87 Wn. App. 912, 919, 943 P.2d 682 (1997).

Mere physical separation does not suffice. *Seizer*, 132 Wn.2d at 657. Instead, the marital community must no longer exist. *Seizer*, 132 Wn.2d at 657. The marital community no longer exists only when the evidence shows that both spouses engaged in conduct demonstrating that they no longer had the will to continue the marriage. *Seizer*, 132 Wn.2d at 658.

Here, the trial court found that Samir and Alice's marriage was intact until December 1, 2010, based on the date Alice filed for divorce, and found that Samir failed to prove that both spouses "had a mutual intent to abandon the marriage before December 1, 2010." CP at 374. We interpret this finding to mean that Samir failed to prove by a preponderance of the evidence that he and Alice lived separate and apart before Alice filed for divorce in 2010 because the

evidence did not demonstrate that both spouses engaged in conduct demonstrating that they no longer had the will to continue the marriage before that time.

Substantial evidence supports this finding. First, Samir and Alice travelled together to celebrate their wedding anniversaries in 2007 and 2008. Second, Samir and Alice planned to move in together in 2009 and 2010. Third, Samir and Alice filed their taxes jointly through 2009. Fourth, Alice testified that she attempted to preserve the marriage through 2011. Finally, Samir did not file for divorce, and Alice filed for divorce on November 22, 2010. These facts provide substantial evidence to support the trial court's finding that Samir failed to prove with a preponderance of the evidence that Samir and Alice lived "separate and apart" before Alice filed for divorce in 2010 because the evidence did not demonstrate that both spouses engaged in conduct demonstrating that they no longer had the will to continue the marriage before that time. Thus, the trial court did not err in determining that the marital community was intact until December 1, 2010.

B.      *Failure To Find that the Ring was Alice's Asset*

Samir argues that the trial court erred by failing to find that the ring was Alice's asset. We disagree.

The trial court did not make an affirmative finding that the ring was Alice's asset, which we presume to be a finding that the ring was not Alice's asset. *See A.B.*, 168 Wn.2d at 927. Substantial evidence supports this finding. Alice testified that she gave the ring to her mother for

her 50th wedding anniversary. Alice testified that Samir consented to this gift. Substantial evidence supports the trial court's finding that the ring was not Alice's asset.[3]

C.    *Findings on Voluntary Unemployment and Underemployment*

Samir argues that the trial court erred by determining that he was voluntarily unemployed and that Alice was not voluntarily underemployed. We disagree.

RCW 26.19.071(6) mandates that the trial court impute income when it finds that a spouse is voluntarily unemployed or underemployed:

> **Imputation of income.** The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors.

Voluntary unemployment and voluntary underemployment is "brought about by one's own free choice, and is intentional." *In re Marriage of Brockopp*, 78 Wn. App. 441, 446 n.5, 898 P.2d 849 (1995).

1. *Finding that Samir's Unemployment Was Voluntary*

Samir argues that substantial evidence does not support the trial court's finding that his unemployment was voluntary. We disagree.

Samir had a master's degree in engineering, certification as a professional engineer in 14 states, and a strong work history at a high salary. Samir had worked as a professor. Samir had chronic health problems, but had worked with these health problems until July of 2012. Samir

---

[3] Samir appears to argue that the trial court should have considered unrelated jewelry and dental equipment allegedly in Alice's possession when deciding whether the ring was Alice's asset. But the unrelated jewelry and dental equipment have no bearing on whether the ring was Alice's asset.

had searched for employment in the field of engineering, but had not attempted to apply for any jobs outside of that field, such as teaching or working in another field of construction. Substantial evidence supports the trial court's finding that Samir's unemployment was voluntary.

2. *Failure To Find that Alice's Part-Time Underemployment Was Voluntary*

Samir argues that the trial court erred by failing to find that Alice's part-time underemployment was voluntary. We disagree.

The trial court did not make a finding that Alice's part-time underemployment was voluntary; we presume this to be a finding that Alice's underemployment was not voluntary. *See A.B.*, 168 Wn.2d at 927. Substantial evidence supports this finding. Alice had a very large gap in work history because she was a stay-at-home mother from 1986 until 2005. Alice testified, with support of her job search log, that despite diligent efforts to find full-time employment from September of 2011 until trial, she could find only part-time employment. Substantial evidence supports the trial court's finding that Alice's underemployment was not voluntary.

D.     *Finding that Alice Borrowed $50,000 from her Family*

Samir argues that substantial evidence does not support the trial court's finding that Alice borrowed $50,000 from her family during the marriage. We disagree.

The trial court found that Alice borrowed $50,000 from her family. This was based on four loans to Alice: $62,218 from her brother, $10,000 from George, $7,800 from Alice's sister, and $4,650 from Alice's father.

Substantial evidence supports the trial court's finding that Alice borrowed $50,000 during the marriage. Promissory notes in the record before us provide substantial evidence of the brother's loans. George's testimony, along with copies of cancelled checks, provides substantial

evidence of George's loans. Alice's testimony, along with copies of cancelled checks, provide substantial evidence of her sister's loans. Alice's testimony and wire transfer receipts provide substantial evidence of her father's loans. Thus, substantial evidence supports the trial court's finding that Alice borrowed $50,000 from her family during the marriage.

E.      *Finding that Alice Received No Equity from the Vancouver Property's Sale*

Samir argues that substantial evidence does not support the trial court's finding that Alice received no equity from the Vancouver property's sale. We disagree.

Alice testified that her brother's company purchased the property in Alice's name because Alice planned to live there. In addition, the trial court admitted a cancelled check showing that Alice's brother's company made the down payment on the property. Alice testified that she decided to move to a location with a better school district rather than move into the house that Alice's brother was building on the property. Alice's brother then built a house on the property, sold the property, and transferred the equity to his company. Substantial evidence supports the trial court's finding that Alice received no equity from the property's sale.

F.      *Finding that the Ford, Pontiac, and Mercury Had a Collective Total Value of $2,000*

Samir argues that the Ford and Pontiac are worthless, and that thus, substantial evidence does not support the trial court's finding that the Ford, Pontiac, and Mercury had a combined total value of $2,000. We disagree.

The trial court assigned the three vehicles a combined total value of $2,000. Alice testified that the Mercury alone was worth $5,000, based on its Blue Book value. Alice's testimony regarding the Mercury's value is substantial evidence that the three vehicles had a combined total value of at least $2,000, regardless of the value of the Ford and Pontiac.

## II. DISCRETIONARY DECISIONS

Samir argues that the trial court abused its discretion when it divided community property and debt and when it imputed his income. We disagree.

There is a heavy presumption in favor of upholding the trial court's judgment in a dissolution action. *Landry*, 103 Wn.2d at 809. We will not overturn a trial court's decisions in a dissolution action unless the party challenging the decision can show that the trial court abused its discretion. *In re Marriage of Bowen*, 168 Wn. App. 581, 586, 279 P.3d 885, *review denied*, 176 Wn.2d 1009 (2012). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Bowen*, 168 Wn. App. at 586.

A.     *Dividing the Community Property*

Samir argues that the trial court abused its discretion by distributing four of Samir's pensions to Alice. We disagree.

The trial court has broad discretion in distributing property, overturned only for abuse of discretion. *See In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985). The trial court is in the best position to assess the spouses' assets and liabilities to determine what is "fair, just and equitable under all the circumstances." *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (quoting *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)).

Here, the trial court distributed the community property (assets and liabilities) such that Samir received a net value of $343,259.81, and Alice received a net value of $429,045.70. Property awarded to Alice in the amount of $25,000.00 was to account for a portion of Samir's

back child support, and the trial court subtracted $25,000.00 from Samir's back child support accordingly. *See generally In re Marriage of Hammack*, 114 Wn. App. 805, 809, 60 P.3d 663 (2003). The trial court also adjusted Samir's maintenance payment downward and denied Alice's request for additional attorney fees. Although the trial court awarded four of Samir's pensions to Alice, it took these four pensions into consideration when calculating its overall distribution of community property. The trial court's distribution of property was not an abuse of its broad discretion to determine what was fair, just, and equitable under all the circumstances.[4]

B.       *Allocating the Ring Debt to Samir*

Samir argues that the trial court abused its discretion by allocating the ring debt to him. We disagree.

The marital community's members may not waste co-owned assets, but must honor their obligation to manage marital assets to the benefit of the community. *See generally* RCW 26.16.030. A trial court "has discretion to consider whose 'negatively productive conduct' depleted the couples' assets and to apportion a higher debt load or fewer assets to the wasteful marital partner." *In re Marriage of Williams*, 84 Wn. App. 263, 270, 927 P.2d 679 (1996) (quoting *In re Marriage of Clark*, 13 Wn. App. 805, 809, 538 P.2d 145 (1975)).

---

[4] For the first time in his reply brief, Samir argues that the trial court erred by (1) characterizing a Falcon retirement account as community property because this account was started after December 1, 2010, and (2) characterizing a Wachovia account as community property because the account was depleted before December 1, 2010. We do not address arguments raised for the first time in a reply brief. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

While little precedent exists determining exactly what constitutes waste in Washington, we have recognized that the failure to pay taxes constitutes marital waste. *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991). The issue here is whether Samir's failure to pay community debts, despite ample resources to do so, constituted waste.

Here, the trial court's unchallenged finding of fact states that Samir made low monthly payments on the ring debt during the time that he had substantial income. This is essentially a finding that Samir committed waste. Because of Samir's low monthly payments, after paying $10,568.24 on the ring debt, he still owed $9,573.19 in September of 2012. Thus, the slow payment of the ring debt incurred over $5,000 in credit card interest.

Samir does not challenge the trial court's finding that he paid the ring debt in low monthly payments despite a substantial income, and thus, the finding is a verity on appeal. *Kim*, 179 Wn. App. at 246. This finding supports the conclusion that Samir's actions depleted community assets because Samir's slow payment of the ring debt allowed for the accumulation of interest. The trial court's unchallenged finding supports its determination that Samir committed waste. Thus, the trial court did not abuse its discretion in considering this waste when deciding to apportion a higher debt load to Samir by allocating the remaining ring debt to him.

C.    *Imputing Samir's Income at $60,000 Per Year*

Samir argues that the trial court abused its discretion by imputing his income at $60,000 per year, and calculating his child support based on that imputed income. We disagree.

We review imputation of income due to voluntary unemployment for abuse of discretion. *In re Marriage of Wright*, 78 Wn. App. 230, 234, 896 P.2d 735 (1995); *see Bowen*, 168 Wn.

App. at 586. Under RCW 26.19.071(6), the trial court is obligated to impute income when it finds that a spouse is voluntarily unemployed:

> **Imputation of income.** The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. . . . In the absence of records of a parent's actual earnings, the court shall impute a parent's income in the following order of priority:
>
> (a) Full-time earnings at the current rate of pay;
>
> (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data.

Here, after finding that Samir's unemployment was voluntary, RCW 26.19.071(6) mandated that the trial court impute Samir's income. The trial court could not base its imputation on Samir's current rate of pay because Samir was unemployed. Thus, the trial court imputed Samir's income based on his historical rate of pay under RCW 26.19.071(6)(b).

Samir earned over $100,000 per year from 2010 until July of 2012. The trial court imputed Samir's income at $60,000 per year, recognizing that he may have to accept lower paying work. The trial court's decision was not manifestly unreasonable, and thus, not an abuse of discretion. This is because the trial court imputed Samir's income based on historical earnings, but accounted for the possibility that Samir would have to accept lower paying work.[5]

---

[5] Samir also appears to assert that the trial court should have modified his back child support obligations. Because Samir provides no argument or citation to authority regarding modification of his back child support, we do not consider this issue. RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

## ATTORNEY FEES

Both Samir and Alice request attorney fees on appeal under RCW 26.09.140. When awarding attorney fees under RCW 26.09.140, we examine the arguable merit of the issues and the parties' financial resources. *In re Marriage of Griffin*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). If the trial court awards a party substantial property in dissolution, such that the party can carry his or her own attorney fees, we will not grant attorney fees on appeal. *Wright*, 319 P.3d at 52-53.

Here, the trial court distributed the community assets and liabilities such that each party received a net value of over $340,000. We deny both Samir's and Alice's requests for attorney fees under RCW 26.09.140 because the trial court awarded both parties substantial property in the dissolution, such that both parties can carry their own attorney fees.

Alice requests attorney fees under RAP 18.9, arguing that Samir's appeal was frivolous. "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal." *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). An appeal is not frivolous where the appellant raises even one debatable issue. *Advocates for Responsible Dev.*, 170 Wn.2d at 580.

Here, whether substantial evidence supports the trial court's finding on the date of separation and whether the trial court abused its discretion by assigning Samir the ring debt

17

No. 44449-6-II

presented debatable issues upon which reasonable minds might differ. Because Samir's appeal was not frivolous, we deny Alice's attorney fees request.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Lee, J.

Melnick, J.