## BRADY DOUGAN *v.* TOMOKO HAMADA DOUGAN
### (SC 18410)

Rogers, C. J., and Norcott, Palmer, Zarella, Eveleigh and Vertefeuille, Js.

Argued March 15—officially released July 5, 2011

*Gary I. Cohen*, with whom, on the brief, were *Marci Finkelstein* and *Annmarie P. Briones*, for the appellant (plaintiff).

*Gaetano Ferro*, with whom were *Livia D. Barndollar* and *Morton E. Marvin*, for the appellee (defendant).

*Opinion*

EVELEIGH, J. In this certified appeal,[1] the plaintiff, Brady Dougan, appeals from the judgment of the Appellate Court reversing the judgment of the trial court that invalidated a financial order included in the stipulated judgment dissolving his marriage to the defendant, Tomoko Hamada Dougan. *Dougan* v. *Dougan,* 114 Conn. App. 379, 380–83, 970 A.2d 743 (2009). On appeal to this court, the plaintiff claims that the Appellate Court improperly concluded that the provision in a stipulated judgment of dissolution requiring payment of interest, upon default, from the date of the stipulated judgment to the date of default (interest provision), is enforceable. We disagree and affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The parties married in November, 1988, in Tokyo, Japan. The parties had two children, born in 1992 and 1997, respectively. At the time of the dissolution, the plaintiff . . . was employed as a senior executive of one of the world's largest investment banks and financial institutions. He had a gross weekly income of $384,615.

"Following more than one year of proceedings, the parties entered into a stipulation for judgment on June 16, 2005. Both parties were represented by experienced counsel during the proceedings and negotiations leading to the stipulation. The parties were assisted in reaching an agreement by an agreed upon attorney mediator.

"The stipulation included a complete distribution of the nearly $80 million in assets held by the parties. As

[1] We granted the plaintiff's certification to appeal limited to the following issue: "Did the Appellate Court properly determine that the trial court incorrectly concluded that the provision in a stipulated judgment of dissolution requiring payment of interest upon default was invalid as against public policy?" *Dougan* v. *Dougan,* 292 Conn. 920, 974 A.2d 721 (2009).

part of that property division, the plaintiff agreed to pay the defendant $15,325,000 by cash, check or the equivalent thereof in two installments.[2] The agreement provided that the plaintiff pay $7,825,000 within thirty days of the dissolution decree and the remaining $7.5 million 'on or before June 16, 2006. That amount shall be fully secured. The [plaintiff] shall provide security within thirty days of the time of the decree dissolving the marriage of the parties. If the [defendant] believes the security to be unreasonable as to amount, terms or otherwise, the [trial court] shall determine reasonable security and the decree of dissolution shall reserve jurisdiction for that purpose. In the event payment is not made when due, interest at [10 percent] per annum shall accrue from the date *hereof* until fully paid and the [plaintiff] shall be responsible for all of the [defendant's] costs of collection.' . . .

"At the dissolution hearing on June 17, 2005, the plaintiff testified that he was satisfied that he had had an ample opportunity to consider all of the issues implicated by the stipulated judgment and that taken as a whole and recognizing that every agreement is by its nature a compromise, the agreement was fair and reasonable. The plaintiff also testified that the parties had agreed on the property division, including the transfer of cash as set forth in the agreement, and he acknowledged that 'time was of the essence' and that if the payment was not made on time, interest could be imposed.

"The parties negotiated the terms of the stipulation thoroughly. When questioned by the plaintiff's attorney, the defendant testified that during negotiations, she suggested that changes be made to paragraphs and sec-

---

[2] "The defendant also received one of the parties' residences, valued at $9.6 million, accounts totaling $143,336 and a 2000 BMW X5. The plaintiff received the remainder of the assets held by the parties." *Dougan* v. *Dougan*, supra, 114 Conn. App. 381 n.2.

tions of the agreement.[3] The [trial] court also asked the defendant if she was comfortable with the stipulation, and she confirmed that she was. The [trial] court then stated, 'I think it's fair, by the way, if it means anything to you.'

"On June 17, 2005, the [trial] court found the stipulation for judgment 'fair and equitable,' rendered judgment of dissolution of the marriage and incorporated the stipulation for judgment by reference.

"On June 28, 2006, the plaintiff paid the defendant $7.5 million.[4] Subsequently, the plaintiff paid the defendant $24,999.96, representing 10 percent interest from June 16 [the date the second payment was due] to June 28, 2006. The defendant moved for enforcement of the stipulation and requested that the [trial] court order the plaintiff to pay her interest in accordance with the terms of the judgment. The defendant argued that if the payment was not made on or before June 16, 2006, the agreement provided for interest at the rate of 10 percent *from the date of the stipulation* to the date the payment was made to the defendant. The [trial] court heard argument by the parties on the issue of whether the interest provision of the agreement was void as against public policy. On March 15, 2007, in its memorandum of decision, the [trial] court held that the provision for interest

---

[3] "In addition, during the dissolution hearing, the following exchange occurred:

" '[The Plaintiff's Counsel]: You understand that . . . the [trial] court, if it approves the agreement, will essentially provide that at the expiration of . . . five years, if the alimony has not ended by reason of the death of either party or [the defendant's] remarriage, it will end on that date and may not be extended?

" '[The Plaintiff]: That's right.

" 'The Court: Remarriage terminates, cohabitation doesn't?

" '[The Plaintiff's Counsel]: Yes, sir. There was a quid pro quo for the removal of a cohabitation provision.' " *Dougan* v. *Dougan*, supra, 114 Conn. App. 382 n.3.

[4] "The first payment, due within thirty days of the dissolution decree, is not at issue in this appeal." *Dougan* v. *Dougan*, supra, 114 Conn. App. 382 n.4.

from the date of the stipulation was invalid and unenforceable because it was not a valid liquidated damages clause but 'a provision, which has as its prime purpose the deterrence of a breach by the [plaintiff], which is an invalid purpose and is against public policy.'[5] The defendant timely appealed [to the Appellate Court]." (Emphasis in original.) Id., 381–83.

On appeal to the Appellate Court, the defendant claimed that the trial court improperly: (1) held the interest provision of her stipulated dissolution judgment unenforceable as against public policy; and (2) refused to enforce the interest provision that it previously had found fair and equitable. A majority of the Appellate Court agreed with the defendant and concluded that it is not "against the public policy of the state to allow such a provision in a judgment of dissolution incorporating a settlement agreement approved by the court as fair and equitable when the parties, represented by counsel, entered into the agreement with knowledge of its terms following a long period of negotiations." Id., 388. In a concurring opinion, Judge Borden also concluded that the judgment of the trial court should be reversed and the case remanded for further proceedings, however, he reasoned that "because this is a family dissolution case, involving an obviously financially sophisticated plaintiff, in which both parties were represented by sophisticated domestic relations attorneys, who reached a settlement of their complicated financial affairs that was approved by the [trial] court, [he] would hold the plaintiff . . . to the terms of the agreement." Id., 391 (*Borden, J.,* concurring). Accordingly, the Appellate Court reversed the judgment of the trial court

---

[5] "The plaintiff also argued to the [trial] court that the provision was ambiguous. The [trial] court found that the provision was 'clear and unambiguous.' " *Dougan* v. *Dougan,* supra, 114 Conn. App. 383 n.5. The plaintiff did not challenge that conclusion in the Appellate Court and it is not at issue in the present appeal.

and remanded the case to that court for further proceedings in accordance with law.[6] Id. This certified appeal followed.[7]

On appeal to this court, the plaintiff asserts that the Appellate Court improperly concluded that the trial court incorrectly failed to enforce the interest provision, which required payment of interest, upon default, from the date of the stipulated judgment to the date of payment. In response, the defendant claims that the Appellate Court properly concluded that the trial court incorrectly failed to enforce the interest provision of the stipulated dissolution judgment requiring payment of interest, upon default, from the date of the stipulated judgment to the date of payment.

Following this court's grant of certification, pursuant to Practice Book § 84-11 (a),[8] the defendant filed a statement of alternative grounds upon which the judgment of the Appellate Court should be affirmed. Specifically, the defendant sought special permission to raise, inter alia, the alternative ground that the judgment of the Appellate Court should be affirmed because the doc-

---

[6] Judge Gruendel dissented from the Appellate Court majority, concluding that the trial court properly refused to enforce the provision of the stipulated dissolution judgment on the ground that it constituted a penalty and its enforcement would violate the rule against the enforcement of penalties. *Dougan* v. *Dougan*, supra, 114 Conn. App. 407–408.

[7] See footnote 1 of this opinion.

[8] Practice Book § 84-11 (a) provides: "Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. Any party to the appeal may also present for review adverse rulings or decisions which should be considered on the appeal in the event of a new trial, provided that such party has raised such claims in the appellate court. If such alternative grounds for affirmation or adverse rulings or decisions to be considered in the event of a new trial were not raised in the appellate court, the party seeking to raise them in the supreme court must move for special permission to do so prior to the filing of that party's brief. Such permission will be granted only in exceptional cases where the interests of justice so require."

trine of judicial estoppel supports the enforcement of the interest provision.[9] Pursuant to § 84-11, we granted the defendant special permission to raise this issue as an alternative ground to affirm the judgment of the Appellate Court, even though she had not raised it or briefed it below. In her brief to this court, the defendant claims that the doctrines of judicial estoppel and induced error bar the plaintiff from now claiming that the interest provision is unenforceable because the plaintiff testified at the dissolution hearing that he understood the agreement and believed it to be fair and equitable. We agree with the defendant on this alternative ground.[10]

We begin by setting forth our standard of review. In dissolution actions, the trial court is authorized to accept an agreement crafted by the parties and incorporate it into its order or decree if the court finds, after inquiry of the parties, that the agreement is fair and equitable. General Statutes § 46b-66. As a result, "[a] stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement. . . .

---

[9] The defendant also claimed that the judgment of the Appellate Court should be affirmed on the alternative ground that the plaintiff's claim is barred by the doctrines of res judicata and induced error. Because we conclude that the plaintiff's claim is barred by the doctrine of judicial estoppel, we do not reach the plaintiff's claims regarding res judicata and induced error.

[10] Because we conclude that the plaintiff is barred from claiming that the interest provision is unenforceable, we do not address the issue raised by the certified question.

"It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake. . . . For a judgment by consent is just as conclusive as one rendered upon controverted facts." (Citations omitted; internal quotation marks omitted.) *Gillis* v. *Gillis*, 214 Conn. 336, 339–40, 572 A.2d 323 (1990); see also *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 389–90, 985 A.2d 319 (2009).

"Because a stipulation is considered a contract, [o]ur interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts. . . . Thus, if there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Citation omitted; internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, supra, 294 Conn. 390.

In the present case, the plaintiff asserts that the interest provision, which requires the payment of interest, upon default, from the date of the stipulated judgment to the date of payment is unenforceable because it violates public policy. "Although it is well established that parties are free to contract for whatever terms on which they may agree . . . it is equally well established that contracts that violate public policy are unenforceable. . . . [T]he question [of] whether a contract is against public policy is [a] question of law dependent on the circumstances of the particular case, over which an appellate court has unlimited review." (Citations omitted; internal quotation marks omitted.) *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 326–27, 885 A.2d 734 (2005).

We start our analysis by reiterating the well established principle that "[the] issues involving financial

orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 378, 999 A.2d 721 (2010). Indeed, recognizing that a stipulated dissolution agreement is also a carefully crafted mosaic, § 46b-66 (a)[11] requires a court either to accept or reject a stipulated dissolution agreement in its entirety without modification. See also *Bank of Boston Connecticut* v. *DeGroff*, 31 Conn. App. 253, 256, 624 A.2d 904 (1993) (concluding that trial court had improperly altered terms of stipulated agreement).

It is also well established that "[w]ith . . . judicial supervision, private settlement of the financial affairs of estranged marital partners is a goal that courts should support [not undermine]. . . . Under our statutes, a court has an affirmative obligation, in divorce proceedings, to determine whether a settlement agreement is fair and equitable under all the circumstances. General Statutes § 46b-66. [To this end] [t]he presiding judge has the obligation to conduct a searching inquiry to

---

[11] General Statutes § 46b-66 (a) provides: "In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. *If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court.* If the court finds the agreement is not fair and equitable, it shall make such orders as to finances and custody as the circumstances require. If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d." (Emphasis added.)

make sure that the settlement agreement is substantively fair and has been knowingly negotiated." (Citation omitted; internal quotation marks omitted.) *Jucker* v. *Jucker*, 190 Conn. 674, 676, 461 A.2d 1384 (1983).

With these principles in mind, we turn to the language of the provision at issue, which provides in relevant part: "The [plaintiff] shall pay the [defendant] the sum of fifteen million three hundred twenty five thousand ($15,325,000) dollars, in cash, by check, or equivalent, as follows:

"a. Seven million eight hundred and twenty five thousand ($7,825,000) dollars within thirty (30) days of the decree dissolving the marriage of the parties.

"b. Seven million five hundred thousand ($7,500,000) dollars on or before June 16, 2006. . . . In the event payment is not made when due, interest at [10 percent] per annum shall accrue from the date hereof until fully paid and the [plaintiff] shall be responsible for all of the [defendant's] costs of collection. . . ."

The trial court determined that the interest provision clearly and unambiguously provided that, upon default, the plaintiff would be responsible for paying interest from the date of the stipulated judgment to the date of payment. On appeal, indeed, the plaintiff does not challenge the trial court's finding that the language is clear and unambiguous.[12] Instead, the plaintiff asserts on appeal that the language is unenforceable because it is a penalty clause and, therefore, violates public policy. In her alternative ground for affirmance, the defendant claims that the doctrine of judicial estoppel bars the plaintiff from making this claim.[13] Specifically, the defendant claims that the plaintiff is now taking a position inconsistent with the position he took when

[12] See footnote 5 of this opinion.
[13] See footnote 9 of this opinion.

he testified under oath at the dissolution proceeding that he understood the terms of the agreement and that he believed the agreement to be fair and equitable. In response, the plaintiff asserts that the doctrine of judicial estoppel does not apply because when he testified at trial, he was agreeing to his understanding of the interest provision—namely, that the language in the interest provision calling for interest to accrue "from the date hereof," meant that interest would accrue from the date payment was due. The plaintiff claims, therefore, that his position now is not inconsistent with the position he took under oath at the dissolution hearing. We agree with the defendant and conclude that the plaintiff's claim is barred by the doctrine of judicial estoppel.

We have recently decided that the doctrine of judicial estoppel may be invoked under certain circumstances. *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 169, 2 A.3d 873 (2010). " '[J]udicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding. . . . [J]udicial estoppel serves interests different from those served by equitable estoppel, which is designed to ensure fairness in the relationship between parties. . . . The courts invoke judicial estoppel as a means to preserve the sanctity of the oath or to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.' . . . *Simon* v. *Safelite Glass Corp.*, 128 F.3d 68, 71 (2d Cir. 1997); see also, e.g., *New Hampshire* v. *Maine*, 532 U.S. 742, 749–50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (judicial estoppel 'protect[s] the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment' . . . )." *Assn. Resources, Inc.* v. *Wall*, supra, 169–70.

"Typically, judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted

in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. . . . We further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain. . . . Thus, courts generally will not apply the doctrine if the first statement or omission was the result of a good faith mistake . . . or an unintentional error." (Citations omitted; internal quotation marks omitted.) Id., 170.

In the present case, the record demonstrates that the plaintiff understood the language of the interest provision. First, the trial court determined, and the plaintiff does not challenge, that the language of the interest provision clearly and unambiguously provides that upon default, the plaintiff would be responsible for paying interest from the date of the stipulated judgment to the date of default. Second, the stipulated agreement was the product of negotiations over the course of one year, including a two day mediation, and the stipulated agreement was one of approximately three or four prior drafts that had been considered by the parties. Third, the plaintiff and the defendant were represented by experienced domestic relations attorneys during the negotiations, the mediation and the dissolution hearing. We also note that the plaintiff was represented during the extensive negotiations, the mediation and the dissolution hearing by the same attorney who represents him in this appeal.[14] Fourth, the

---

[14] As Judge Borden noted in his concurring opinion at the Appellate Court, it is "disconcerting" that the same attorney who participated in the extensive negotiations and mediation that resulted in the stipulated agreement and the interest provision now asserts that the provision—which he previously presented to the trial court as fair and equitable—is unenforceable as against public policy. Indeed, Judge Borden found such representation to be "unseemly . . . ." *Dougan* v. *Dougan*, supra, 114 Conn. App. 395 n.4 (*Borden, J.,* concurring).

At oral argument before this court, the plaintiff's counsel was questioned about his change in position. He responded that he felt that he had an obligation to his client to challenge the interest provision at his client's

plaintiff and the defendant testified at the dissolution hearing that they consented and agreed to the stipulated agreement. Indeed, the plaintiff testified that he was "familiar with each and every clause." Fifth, the plaintiff is a highly educated and financially sophisticated party. The record demonstrates that the plaintiff received both a bachelor's degree and a master's degree in business administration from the University of Chicago and, at the time of the dissolution, was employed by an investment banking firm, earning a monthly net income of more than $1 million, and having accumulated total assets of $77,420,050.

Approximately one year after representing to the trial court that he was aware of, understood and agreed to the stipulated agreement in its entirety, and that the agreement was fair and equitable, the plaintiff and his attorney asked that court to invalidate the provision because it constituted a penalty and was unenforceable as against public policy. As we explained previously, "judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." (Internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, supra, 298 Conn. 170. We conclude that the facts of the present case satisfy the conditions for application of the doctrine of judicial estoppel to bar the plaintiff from now claiming that the provision is unenforceable.

First, both the plaintiff and his attorney were aware of and understood the terms of the interest provision at the time that they presented the stipulated agreement to the court, represented to the court that the agreement

---

behest. As we have explained previously, the doctrine of judicial estoppel bars this court from considering this change in position.

was fair and reasonable and asked the court to incorporate the agreement into the judgment of dissolution. Second, by now asking that the court refuse to enforce the provision, the plaintiff is taking a position clearly inconsistent with his previous position. Third, if the plaintiff were allowed to ask the court to invalidate this particular provision of the agreement that entitles the defendant to a substantial sum of money as interest for the plaintiff's failure to make a timely payment under the agreement, the plaintiff would derive an unfair advantage from this change of position.

We conclude, therefore, that the Appellate Court properly reversed the judgment of the trial court for failing to enforce the provision.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and NORCOTT, PALMER and VERTEFEUILLE, Js., concurred.

ZARELLA, J., concurring. I agree with the majority's determination that the judgment of the Appellate Court should be affirmed. I reach that result, however, by taking a somewhat different approach. Rather than reaching an alternative ground for affirmance, I would address the issues that the parties raised and argued before the Appellate Court. In doing so, I would agree with the well reasoned opinions of the Appellate Court majority and concurrence. See *Dougan* v. *Dougan*, 114 Conn. App. 379, 970 A.2d 131 (2009); id., 391 (*Borden, J.*, concurring).