ROBERT L. PETERSON *v.* LAURIE
SYKES-PETERSON
(AC 32314)

Robinson, Espinosa and Sheldon, Js.

Argued December 1, 2011—officially released February 21, 2012

*Jon L. Schoenhorn*, for the appellant (plaintiff).

*Steven D. Ecker*, with whom was *M. Caitlin S. Anderson*, for the appellee (defendant).

*Opinion*

ROBINSON, J. The plaintiff, Robert L. Peterson, appeals following the dissolution of his marriage to the defendant, Laurie Sykes-Peterson, from the trial court's prejudgment determination that the parties' prenuptial agreement had expired during the pendency of the dissolution action pursuant to a provision rendering the agreement void on the seventh anniversary of the parties' marriage (sunset provision). The plaintiff claims that (1) the court improperly determined that the prenuptial agreement was unenforceable on the basis of the sunset provision because (a) the language of the sunset provision was ambiguous in light of other provisions and the pending divorce action and (b) enforcement of the sunset provision violated public policy, and

(2) even if the sunset provision was applicable, the court should not have enforced it against the plaintiff because the defendant had breached the agreement when she asked the court to enter pendente lite financial orders. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The parties married on July 14, 2000. Three days prior to the marriage, at the plaintiff's request, the parties entered into a prenuptial agreement. The prenuptial agreement contained a sunset provision, Article XII, which provided in its entirety: "This Agreement shall become null and void and of no further force and effect upon the seventh (7th) anniversary of the parties' marriage." The seventh anniversary of the parties' marriage was July 14, 2007.

On March 1, 2007, the plaintiff commenced this dissolution action. The complaint stated that the parties' marriage had broken down irretrievably. By way of relief, the plaintiff sought dissolution of the parties' marriage and such other relief as the court deemed equitable. The complaint did not allege the existence of the parties' prenuptial agreement or ask the court to enforce any such agreement.

On June 11, 2007, the defendant filed an answer and cross complaint for dissolution of the marriage. The defendant also moved for a pendente lite award of alimony, attorney's fees and exclusive possession of the marital home. On August 6, 2007, the parties entered into a stipulated agreement, approved by the court, in which they reached a temporary agreement as to the relief requested in the pendente lite motions. They also agreed to submit written memoranda to the court addressing the enforceability of their prenuptial agreement "as such relates to both the pendente lite and permanent application of such agreement."

On August 30, 2007, the plaintiff filed a motion for a temporary and a permanent injunction against the defendant. The motion noted that, in response to a request for admission, the defendant acknowledged executing a prenuptial agreement but reserved her right to challenge the validity of the agreement, which the plaintiff contended was in direct violation of the agreement. The plaintiff asked the court "to enter a temporary and permanent injunction forbidding the defendant to take any further steps seeking to invalidate said agreement." The plaintiff filed identical motions on February 19 and June 17, 2008, none of which were acted on by the court.

On August 8, 2008, the parties filed briefs addressing the enforceability of the prenuptial agreement. One of the defendant's arguments against the enforceability of the agreement was that the existence and applicability of the prenuptial agreement was not pleaded in the complaint. On October 2, 2008, the plaintiff amended his complaint to include a second count seeking enforcement of the parties' prenuptial agreement. The defendant filed an answer and special defenses to the new complaint in which she denied the plaintiff's allegation that the prenuptial agreement was enforceable.

The court heard argument from counsel regarding the enforceability of the prenuptial agreement on October 7, 2008, and the parties each submitted a posthearing brief. On March 4, 2009, the trial court issued a memorandum of decision in which it found that the sunset provision of the prenuptial agreement was unambiguous, and, despite the pending divorce proceedings, the prenuptial agreement had become unenforceable as of July 14, 2007. The court also rejected the plaintiff's argument that the sunset provision was unenforceable as a matter of public policy because it acted as an incentive to the plaintiff to seek a divorce. The matter proceeded to a trial, following which, the court issued

a memorandum of decision dissolving the parties' marriage and rendering various financial orders. This appeal followed.

## I

## A

The plaintiff first claims that the trial court improperly determined that the prenuptial agreement was invalid on the basis of the sunset provision because the language of the sunset provision was ambiguous in light of other provisions in the agreement and the pending divorce action. We disagree.

Prenuptial agreements are contracts and "are to be construed according to the principles of construction applicable to contracts generally." (Internal quotation marks omitted.) *Crews* v. *Crews,* 295 Conn. 153, 159, 989 A.2d 1060 (2010). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review." (Internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall,* 298 Conn. 145, 183, 2 A.3d 873 (2010).

Article XII of the prenuptial agreement, the sunset provision, provides in its entirety: "This Agreement shall

become null and void and of no further force and effect upon the seventh (7th) anniversary of the parties' marriage." The plaintiff argues that it was unreasonable for the court to have applied the sunset provision because the plaintiff had filed the dissolution action in March, 2007, several months prior to the parties' seventh wedding anniversary on July 14, 2007. The plaintiff suggests that if the sunset provision is read in the context of the entire agreement, it is clear that the parties intended that the agreement should expire only if the parties were still happily married and actually celebrating their seventh wedding anniversary, rather than in the midst of divorce proceedings. The defendant responds that the court properly construed the sunset provision, which sets forth in clear and unambiguous language that the prenuptial agreement would become null and void if the parties remained married on July 14, 2007. We agree with the defendant.

The trial court correctly determined that the language used in the sunset provision is unambiguous. Affording the language used by the parties its common and ordinary meaning, it is clear that the parties' intention was to create a date certain on which the prenuptial agreement would become void and unenforceable against either party. We cannot and will not import ambiguity into the parties' choice of using their seventh wedding anniversary as the end date for the agreement. If, as the plaintiff argues, the parties' use of the words "upon the seventh (7th) anniversary of the parties' marriage" was meant to convey their intent that the sunset provision should only be effective if the parties were in fact still happily married and actually celebrating their seventh wedding anniversary, the parties could have chosen language that indicated such an intent. For example, they could have added that the agreement would become unenforceable on the parties' seventh wedding

anniversary *provided that the parties remained married and living together and there was no pending separation or divorce action.*[1] We conclude that the court properly determined that the prenuptial agreement was unenforceable on the basis of the sunset provision.

## B

The plaintiff also claims that the court erred in enforcing the sunset provision because that provision acted as an incentive to divorce and therefore violated public policy. We disagree.

General Statutes § 46b-36d, which governs the content of prenuptial agreements entered into after October 1, 1995, provides in relevant part that no provision "may be in violation of public policy or of a statute imposing a criminal penalty." General Statutes § 46b-36d (b). "[A]ntenuptial agreements that promote, facilitate or provide an incentive for separation or divorce are generally opposed to public policy and of dubious enforceability. . . . Thus, a provision of an antenuptial agreement waiving the right to defend against a future divorce action, or one creating a substantial economic advantage upon dissolution irrespective of fault, or one relieving one spouse of the duty to support the other during the marriage, has been said to contravene public policy." (Citations omitted.) *McHugh* v. *McHugh*, 181 Conn. 482, 488–89, 436 A.2d 8 (1980). As previously

---

[1] We note that there were many provisions of the agreement that were so qualified. For example, § 9.6 provided that the plaintiff would pay the defendant $50,000 for each year the parties were married "until the commencement of such action for a divorce, dissolution of marriage, legal separation or annulment." Section 9.3 provided that each party would be restored to his or her separate property "[u]pon the filing by either party of a petition for divorce, dissolution of marriage, legal separation or annulment . . . ." Section 9.8 provided that the parties would not seek relief contrary to the agreement, "[i]n the event of any action between the parties for divorce, dissolution of marriage, legal separation or annulment . . . ."

stated, prenuptial agreements are contracts and therefore must be construed.as such. See *Crews* v. *Crews*, supra, 295 Conn. 159. "[W]hether a contract provision violates public policy is a question of law subject to plenary review." *Dougan* v. *Dougan*, 114 Conn. App. 379, 402, 970 A.2d 131 (2009), aff'd, 301 Conn. 361, 21 A.3d 791 (2011).

We cannot conclude on the basis of the record before us that the sunset provision in the present case violated any public policy. Provisions terminating a prenuptial agreement after the parties are married for several years commonly are included in agreements drafted in Connecticut. See A. Rutkin et al., 8A Connecticut Practice Series: Family Law and Practice with Forms (2010) § 48:8, p. 86. As we already determined, the parties intended the sunset provision to provide a date certain after which time the terms of the prenuptial agreement would expire. After the sunset date, if the parties' marriage ended in divorce, there would be an equitable distribution of the marital estate in accordance with General Statutes § 46b-81. Such a provision understandably could be a useful tool to parties negotiating the terms of a prenuptial agreement in which the proponent might have a valid apprehension about the financial effect of a divorce should the marriage quickly break down, but in which the parties nevertheless could foresee a time in the future when a prenuptial agreement would no longer be necessary or even equitable. The plaintiff suggests that because he clearly stood to benefit more financially from the enforcement of the prenuptial agreement than from an equitable distribution of the marital assets, the existence of the sunset provision actually encouraged him to seek a divorce before the sunset provision took effect. There is no language in the sunset provision itself, however, that directly encourages or incentivizes the filing of a divorce action.

The plaintiff has not provided, nor have we found ourselves, any authority from this jurisdiction or any other suggesting that the existence of a sunset provision in a prenuptial agreement encourages divorce and therefore violates public policy. We are not persuaded that the sunset provision in the present case provided such an incentive to divorce so as to warrant the conclusion that it violated public policy.

## II

Finally, the plaintiff claims that, even if the sunset provision was applicable, the court should not have enforced that provision against him because the defendant had breached the agreement. The plaintiff argues that the defendant breached the prenuptial agreement when she moved the court for an order of pendente lite alimony and attorney's fees, which action the plaintiff contends was prohibited under the agreement. Having breached the agreement herself, the plaintiff argues, the court should not have allowed the defendant to take advantage of the agreement's sunset provision. We decline to review the plaintiff's claim.

Although the plaintiff raised this argument in his prehearing memorandum of law to the trial court in support of the enforceability of the prenuptial agreement, he did not provide any legal analysis supporting his argument and the issue hardly was mentioned at the hearing before the trial court.[2] The court did not address the argument in its memorandum of decision finding the prenuptial agreement unenforceable. The plaintiff did not file a motion for reconsideration or reargument asking the court to address his argument that the sunset

---

[2] The plaintiff's breach argument was mentioned only briefly by the defendant's counsel, who then quickly discounted the argument on the basis of a stipulation he had obtained from the plaintiff's counsel at the beginning of the hearing. The stipulation indicated that the plaintiff had breached the prenuptial agreement by failing to fund annually an investment account for the defendant.

provision somehow was rendered inoperable by the defendant's alleged breach, and the plaintiff did not file a motion for articulation asking the court whether it considered that argument in determining that the prenuptial agreement was unenforceable.

It is well settled that "[t]his court is unable to review claims that were not expressly addressed by the trial court." *Miller* v. *Miller*, 124 Conn. App. 36, 40, 3 A.3d 1018 (2010). It is the appellant's responsibility to move for an articulation "[when] the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . *or to ask the trial judge to rule on an overlooked matter*." (Emphasis in original; internal quotation marks omitted.) Id. Here, the trial court did not address the plaintiff's breach of the agreement argument in its decision finding the prenuptial agreement unenforceable, and the plaintiff did not file a motion for articulation asking the court to address that argument. Accordingly, we decline to review the claim on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.