

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 75155-7-I |
| | ) | |
| JOHN GREGORY, | ) | DIVISION ONE |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| JENNIFER GREGORY, | ) | |
| | ) | |
| Respondent. | ) | FILED: July 17, 2017 |

LEACH, J. — John Gregory appeals the decree of dissolution dissolving his marriage to Jennifer Gregory. He challenges the court's division of assets, claiming that it misread the parties' prenuptial agreement when characterizing their property as separate or community. Because the trial court correctly interpreted the prenuptial agreement, we affirm.

## Background

John Gregory began working for Google in 2001. As part of his initial compensation, he received stock options that vested over four years. He exercised these options before Google went public in 2004. The Google IPO (initial public offering) made John a wealthy man.

John and Jennifer Gregory executed a prenuptial agreement ("Agreement") on September 6, 2005. The Agreement states that they had lived

together for the past three years.  They married seven days later on September 13, 2005.  The couple had one daughter.  They separated on December 30, 2014, when John filed for dissolution.

The parties agreed on a parenting plan but were unable to resolve the financial matters.  After a trial, the trial court entered a decree of dissolution approving the parties' agreed parenting plan and distributing property in accord with its interpretation of the parties' Agreement.

John appeals.

## Analysis

John challenges the trial court's interpretation of two provisions of the parties' Agreement, one providing for the conversion of separate property to community property and one addressing the payment of living expenses.  Neither party challenges the enforceability of the Agreement.

Interpretation of a contract is a mixed question of law and fact.  When the trial court's interpretation depends on the credibility of conflicting evidence, this court upholds the trial court's factual findings when substantial evidence in the record supports them.[1]  But the question of whether a contract is ambiguous is a legal question for the court that an appellate court reviews de novo.[2]

---

[1] Berg v. Hudesman, 115 Wn.2d 657, 667-68, 801 P.2d 222 (1990) (adopting RESTATEMENT (SECOND) OF CONTRACTS § 212 (AM. LAW. INST. 1981)).

[2] GMAC v. Everett Chevrolet, 179 Wn. App. 126, 135, 317 P.3d 1074 (2014).

Property Conversion

The Agreement included provisions converting the parties' separate property to community property in increments over fifteen years, beginning on the fifth anniversary of their marriage. John challenges the trial court's decision that the property conversion provisions continued to convert separate property until the time of trial. He contends that they became inoperative when the marriage became defunct upon his filing this dissolution action.

The Agreement property conversion provisions state,

> (d) Conversion of Separate Property to Community Property. On the fifth anniversary of the Marriage, twenty percent (20%) of each party's remaining separate property shall be converted to community property. Beginning on the sixth anniversary of their Marriage, ten percent (10%) of each party's separate property, including associated separate property obligations, shall be converted to community property each year. More specifically, this shall be accomplished in the following manner.
>
> i.      On the sixth anniversary of the Marriage, one-tenth (1/10) of each party's remaining separate property shall be converted to community property;
>
> ii.      On the seventh anniversary of the Marriage, one-ninth (1/9) of each party's remaining separate property shall be converted to community property;
>
> iii.      On the eighth anniversary of the Marriage, one-eight (1/8) of each party's remaining separate property shall be converted to community property;
>
> iv.      On the ninth anniversary of the Marriage, one-seventh (1/7) of each party's remaining separate property shall be converted to community property;

v. On the tenth anniversary of the Marriage, one-sixth (1/6) of each party's remaining separate property shall be converted to community property;

vi On the eleventh anniversary of the Marriage, one-fifth (1/5) of each party's remaining separate property shall be converted to community property;

vii. On the twelfth anniversary of the Marriage, one-fourth (1/4) of each party's remaining separate property shall be converted to community property;

viii. On the thirteenth anniversary of Marriage, one-third (1/3) of each party's remaining separate property shall be converted to community property;

ix. On the fourteenth anniversary of Marriage, one-half (1/2) of each party's remaining separate property shall be converted to community property; and

x. On the fifteenth anniversary of Marriage, all of each party's remaining separate property shall be converted to community property.

If an actual redesignation of title is not accomplished to implement these conversions, the marital community shall have a community property lien on the party's separate property (which shall include increases and decreases in the value of the assets) until the appropriate changes in title are completed. Following the first day of the fifteenth year of the Marriage, all property of the parties, whether acquired by gift, inheritance, testamentary transfer or otherwise, shall be community property.

The trial court decided that the Agreement was not ambiguous, that marriage anniversaries continued to occur until the marriage was dissolved, and that the final property conversion happened on the tenth marriage anniversary, September 13, 2015. John disagrees. He contends that for purposes of the Agreement, marriage anniversaries stopped occurring when he filed his

-4-

dissolution petition because the marriage became defunct then. Thus, he claims that the last conversion occurred on the ninth marriage anniversary, September 13, 2014.

John cites <u>Seizer v Sessions</u>[3] as support for his position. But we readily distinguish the issue decided in <u>Seizer</u>. There, the court considered the application of Washington's separate and apart statute, RCW 26.16.140,[4] under a set of extreme facts. A man who was never divorced from his mentally incompetent first wife married a second and third time.[5] While he was married to his third wife, he won a substantial sum from the lottery.[6] The first wife, through her guardian, and the third wife made competing claims to these winnings.[7] In this context, the court held that the separate and apart statute required mutuality on the part of the spouses and thus would not apply where an abandoned spouse is mentally ill or incompetent during the separation.[8]

But here the trial court did not apply a statute to determine the status of the parties' property. It interpreted their voluntary agreement about status. In

---

[3] 132 Wn.2d 642, 940 P.2d 261 (1997).

[4] Former RCW 26.16.140 (1978) provided, "When a husband and wife are living separate and apart, their respective earnings and accumulations shall be the separate property of each." RCW 26.16.140 was amended in 2008 to change "husband and wife" to "spouses or domestic partners" but otherwise remained the same. LAWS OF 2008, ch. 6, § 613.

[5] <u>Seizer</u>, 132 Wn.2d at 646-47.

[6] <u>Seizer</u>, 132 Wn.2d at 647.

[7] <u>Seizer</u>, 132 Wn.2d at 647-48.

[8] <u>Seizer</u>, 132 Wn.2d at 659.

paragraph 9 of the Agreement, John and Jennifer acknowledged discussing with their respective counsel a spouse's property rights under Washington law and the fact that the Agreement operated to waive those rights. Thus, Seizer's statutory construction provides no guidance to the meaning of the Agreement.

The Agreement plainly states that on each anniversary after the fifth one, part of the party's separate property shall be converted to community property. The parties were still married on September 13, 2015, the tenth anniversary of their marriage. The applicable Agreement provision provided for conversion of separate property on this date without any limiting qualification about the status of the parties' relationship beyond the fact that they were married. Other provisions of the Agreement show that the parties knew how to include further limitations when they intended them.

The provisions of the Agreement addressing a dissolution occurring within the first five years of marriage provide an example. Those provisions require John to contribute separate property to a community account with the amount calculated based on the date of separation "with the intention that the separation be permanent."

John offers no persuasive reason why the trial court should have implied a similar provision in the disputed provision when the parties did not include it. In the absence of fraud, accident, or mistake, a court will not add, modify, or

contradict the terms of a written contract.[9] As our Supreme Court noted in In re Marriage of Schweitzer,[10] "'[it] is the duty of the court to declare the meaning of what is written, and not what was intended to be written.'" This duty applies equally to what a party later wishes had been written.

In re Estate of Bachmeier[11] supports the trial court's decision  There, a husband and wife signed a community property agreement declaring that all their property was community property and, upon the death of either, making the survivor the owner of that property.[12]  When the husband filed for legal separation, the wife changed her will, disinheriting him and leaving her property to her daughter.[13]  Soon after, the wife died.  When the daughter sought to probate the will, the husband objected, claiming the wife's estate under the community property agreement.[14]  The court rejected the daughter's invitation to imply a provision in the agreement terminating it upon the parties' separation.[15]

Division II of this court reached a similar result in In re Estate of Catto.[16] There, the court rejected the argument that a community property agreement

---

[9] In re Marriage of Schweitzer, 132 Wn.2d 318, 327, 937 P.2d 1062 (1997).

[10] 132 Wn.2d 318, 327, 937 P.2d 1062 (1997) (alteration in original) (internal quotation marks omitted) (quoting Berg, 115 Wn.2d at 669).

[11] 147 Wn.2d 60, 52 P.3d 22 (2002).

[12] Bachmeier, 147 Wn.2d at 62-63.

[13] Bachmeier, 147 Wn.2d at 63.

[14] Bachmeier, 147 Wn.2d at 63.

[15] Bachmeier, 147 Wn.2d at 68-69.

[16] 88 Wn. App. 522, 944 P.2d 1052 (1997).

contained an implied termination provision that became effective when the parties' marriage became defunct.[17] As Bachmeier states, filing a dissolution proceeding is "'not the same as an intention to immediately effect an ex parte abandonment of a valuable contractual right.'"[18]

A Connecticut case, Peterson v. Sykes-Peterson,[19] provides persuasive support. There, the parties signed a prenuptial agreement which contained a sunset clause, terminating the agreement on their seventh anniversary.[20] The seventh anniversary occurred after the husband had filed for divorce but before the divorce became final. As John does, the husband in Peterson argued that the provision would apply only if they were still happily married and celebrating their seventh anniversary.[21] The court disagreed, holding that the language was clear and that had the parties desired a different result, they could have included language that did so. The court offered the example that "the agreement would become unenforceable on the parties' seventh wedding anniversary provided that the parties remained married and living together and there was no pending separation or divorce action."[22] Similarly, here, the trial court could not imply a

---

[17] Catto, 88 Wn. App. at 529.
[18] Bachmeier, 147 Wn.2d at 64 (quoting In re Estate of Lyman, 7 Wn. App. 945, 951, 503 P.2d 1127 (1972)).
[19] 133 Conn. App. 660, 37 A.3d 173 (2012).
[20] Peterson, 37 A.3d at 175.
[21] Peterson, 37 A.3d at 176.
[22] Peterson, 37 A.3d at 177.

provision terminating the property conversion terms of the Agreement on separation.

We reject John's assertion that this result will encourage a party to stall the dissolution process in order to have more property convert to community property. The trial court found no evidence of such a delay on Jennifer's part and noted that if such a scenario had occurred, then John would have been able to assert equitable defenses to Jennifer's effort to specifically enforce the Agreement.

Community Expenses

We turn now to the second issue presented. John claims that the trial court should have reduced the amount of his separate property converted to community property by the amount of community expenses he paid from his separate property.

The Agreement did not require that the parties implement the conversion of their separate property to community on each anniversary. And they did not. Paragraph 1(d) of the Agreement anticipated this circumstance and provided that "[i]f an actual redesignation of title is not accomplished to implement these conversions, the marital community shall have a community property lien on the party's separate property (which shall include increases and decreases in the value of the assets) until the appropriate changes in title are completed."

John paid a significant portion of John and Jennifer's living expenses by contributing money from his separate account to a community joint account. The trial court decided that the Agreement made these payments gifts to the community. It relied on paragraph 3 of the Agreement:

> During Marriage, all ordinary and necessary living expenses . . . shall be paid out of a community property joint account. In the event that there are insufficient funds in the community joint accounts to cover such living expenses, then each party shall contribute to the community joint accounts an amount necessary to pay such expenses, in proportion to each party's respective separate income from all sources. If either party so uses separate property to pay for ordinary and necessary living expenses of the community incurred during Marriage, such separate property payment will be treated as a gift to the community and the contributing Spouse will not have any rights as a lien holder against the community.

(Emphasis added.)

John does not dispute that the parties paid community expenses from joint accounts held in both of their names since January 2012. Rather, John argues that payments from his separate account into that community account come from the annual conversions of his separate property to community property. At trial, however, during John's cross-examination, the following exchange occurred:

Q. Okay. So since the assets were primarily under your control during the marriage, why didn't you segregate them or convert them on the deadlines as stated in the prenuptial agreement?

A. Never came up.

Q. So with all—

A. I was never asked by Jennifer. It never was brought to my attention. I never considered it.

Q. Okay. Did you—then when you were providing Jennifer funds, when you were putting money in her account, was there any kind of support or information regarding what money she was getting? Or did you just—

A. I just provided her funds. I didn't categorize them.

Thus, John clearly never intended to make a contemporaneous conversion. He cannot now recharacterize those transfers as something other than payments from his separate account.

Because no conversions occurred, the prenuptial agreement provided the marital community with a lien on John's separate property.[23] And his payments for community expenses from his separate account did not reduce the amount of the lien the marital community had on his separate property because the Agreement made those payments gifts to the community. We find John's argument that the trial court erred in declining to deduct 2010 through 2011 community expenditures from the community lien similarly unpersuasive.

Jennifer's Request for Attorney Fees

RCW 26.09.140 provides that a court "may" award costs and attorney fees for a party's appeal in a dissolution case "after considering the financial

---

[23] See paragraph 1(d) of the Agreement: "[T]he marital community shall have a community property lien on the party's separate property . . . until the appropriate changes in title are completed."

resources of both parties." After reviewing the parties' financial declarations, we exercise our discretion to deny Jennifer's request for fees.

Affirmed.

_Leach, J._

WE CONCUR:

_____

_Spearman, J._